1  DOUGLAS A. WINTHROP (No. 183532)
   Email: dwinthrop@howardrice.com
2  ROBERT D. HALLMAN (No. 239949)
   Email: rhallman@howardrice.com
3  HOWARD RICE NEMEROVSKI CANADY
       FALK & RABKIN
4  A Professional Corporation
   Three Embarcadero Center, 7th Floor
5  San Francisco, California 94111-4024
   Telephone:  415/434-1600
6  Facsimile:  415/217-5910

7  Attorneys for Plaintiff
   ERNESTO G. LIRA
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  ERNESTO G. LIRA,                         No. C 00-905 SI

14              Plaintiff,                    Action Filed:  March 14, 2000

15      v.                                    FIRST AMENDED COMPLAINT
    DIRECTOR OF CORRECTIONS OF THE            UNDER THE CIVIL RIGHTS ACT,
16  STATE OF CALIFORNIA; et al.,              42 U.S.C. §1983

17              Defendants.                   JURY TRIAL DEMANDED

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    This is a complaint for injunctive relief, declaratory relief, and damages arising from

2    Defendant prison officials' deprivation of Plaintiff Ernesto G. Lira's constitutionally

3    protected liberty interest during his confinement by the California Department of

4    Corrections and Rehabilitation ("CDCR") at the Deuel Vocational Institution ("DVI") and

5    Pelican Bay State Prison ("Pelican Bay" or "PBSP").

6

7                                    **JURISDICTION**

8    1.     This action arises under 42 U.S.C. §1983, and this Court has jurisdiction over

9    Plaintiff's claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

10

11                                       **VENUE**

12   2.     Venue is proper in the Northern District of California, San Francisco Division,

13   under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise

14   to Plaintiff's claims occurred in this district.

15

16             **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

17   3.     Plaintiff Ernesto G. Lira is currently confined at DVI. During the period of time

18   relevant to this action, Plaintiff was an inmate at either DVI or PBSP. Both institutions have

19   a grievance procedure.

20   4.     Plaintiff presented the claim at issue in this Complaint for review through the

21   available grievance procedure.

22

23         **1.    Appeal No. DVI 96-01026.**

24   5.     On July 29, 1996, Plaintiff filed Appeal No. DVI 96-01026 (attached as Exhibit 1

25   to this Complaint). The informal level review was bypassed.

26   6.     The first formal level review was completed on August 23, 1996. Plaintiff's

27   appeal was denied.

28   7.     The second formal level review was completed on September 27, 1996.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

FIRST AMENDED COMPLAINT                                    C 00-905 SI

-1-

1 | Plaintiff's appeal was denied.

2 | 8. The third and final formal level review was completed on January 24, 1997.
3 | Plaintiff's appeal was denied.

4 | 9. Plaintiff initiated additional grievances on April 4, 1998, and November 3, 1999,
5 | each requesting immediate release from his Ad Seg confinement and challenging the basis of
6 | for such confinement. Neither was pursued to the final level of review because in each case
7 | Plaintiff came to the recognition that the prison administration had already been fully
8 | apprised of—and had already rejected—his due process claim through the July 29, 1996
9 | appeal.

10

11 | **2. Appeal No. PBSP 02-03100.**

12 | 10. On November 18, 2002, following this Court's determination that Plaintiff's
13 | July 29, 1996 Inmate Appeal may not have exhausted administrative remedies for his due
14 | process claim in its entirety, Plaintiff filed Appeal No. PBSP 02-03100 (attached as
15 | Exhibit 2 to this Complaint). The informal level review was bypassed.

16 | 11. The first formal level review was completed on December 24, 2002. Plaintiff's
17 | appeal was denied.

18 | 12. The second formal level review was completed on January 28, 2003. Plaintiff's
19 | appeal was denied.

20 | 13. The third and final formal level review was completed on May 21, 2003.
21 | Plaintiff's appeal was denied.

22

23 | **PARTIES**

24 | 14. Plaintiff Ernesto G. Lira is currently an inmate at DVI, in Tracy, California. At
25 | all times relevant to this Complaint, Plaintiff was an inmate within the CDCR system. He
26 | was incarcerated at DVI from October 31, 1995 until his transfer to PBSP on September 23,
27 | 1996. Plaintiff remained incarcerated at PBSP until he was paroled on April 14, 2004.
28 | Following a parole violation, he has been incarcerated at DVI from May 13, 2005, until the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

FIRST AMENDED COMPLAINT C 00-905 SI

-2-

1 present.

2      15.   The Defendants referenced below in paragraphs 16 through 34 were served
3 pursuant to this Court's January 22, 2001 Order of Service, Partial Dismissal and Denial of
4 Injunctive Relief ("Order of Service").

5      16.   During the period of time relevant to this action, Defendant Steve Herrera was
6 employed by the CDCR and was a Sergeant at DVI. He is sued in his individual and official
7 capacities.

8      17.   During the period of time relevant to this action, Defendant Brian Fielder was
9 employed by the CDCR and was an Investigative Services Unit Officer or a Correctional
10 Counselor at DVI. He is sued in his individual and official capacities.

11      18.   During the period of time relevant to this action, Defendant Weldon J. Olmsted
12 was employed by the CDCR and was a Lieutenant at DVI. He is sued in his individual and
13 official capacities.

14      19.   During the period of time relevant to this action, Defendant Edward S. Alameida,
15 Jr. was employed by the CDCR and was Director of the Department from September 2001
16 until December 2003. Upon information and belief he was Chief Deputy Warden at DVI
17 from 1991 until 1996, and Warden from 1996 until March 2000. He is sued in his individual
18 and official capacities.

19      20.   During the period of time relevant to this action, Defendant Donald R. Busser
20 was employed by the CDCR and was an Assistant Warden at DVI. He is sued in his
21 individual and official capacities.

22      21.   During the period of time relevant to this action, Defendant Jose H. Chavez was
23 employed by the CDCR and was a Correctional Counselor at DVI. He is sued in his
24 individual and official capacities.

25      22.   During the period of time relevant to this action, Defendant K. Mann was
26 employed by the CDCR and was a Correctional Counselor at DVI. She is sued in her
27 individual and official capacities.

28      23.   During the period of time relevant to this action, Defendant Darlene Best-Pizzella

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1 was employed by the CDCR and was a Correctional Counselor at DVI. She is sued in her
2 individual and official capacities.

3    24. During the period of time relevant to this action, Defendant John D. Stokes was
4 employed by the CDCR and was a Facility Captain at PBSP. He is sued in his individual
5 and official capacities.

6    25. During the period of time relevant to this action, Defendant Cheryl Bolles was
7 employed by the CDCR and was a Correctional Counselor at PBSP. She is sued in her
8 individual and official capacities.

9    26. During the period of time relevant to this action, Defendant B. Heaps was
10 employed by the CDCR and was a Correctional Counselor at PBSP. He or she is sued in his
11 or her individual and official capacities.

12    27. During the period of time relevant to this action, Defendant Allen K. Scribner
13 was employed by the CDCR and was an Assistant Warden at PBSP. He is sued in his
14 individual and official capacities.

15    28. During the period of time relevant to this action, Defendant C. Patten was
16 employed by the CDCR and was a Correctional Counselor at PBSP. He is sued in his
17 individual and official capacities.

18    29. During the period of time relevant to this action, Defendant Darin W. Bradbury
19 was employed by the CDCR and was a Correctional Counselor at PBSP. He is sued in his
20 individual and official capacities.

21    30. During the period of time relevant to this action, Defendant J. Briddle was
22 employed by the CDCR and was a Captain in the Institutional Gang Investigation Unit at
23 PBSP. He or she is sued in his or her individual and official capacities.

24    31. During the period of time relevant to this action, Defendant Matt J. Nimrod was
25 employed by the CDCR and was a Correctional Counselor at PBSP. He is sued in his
26 individual and official capacities.

27    32. During the period of time relevant to this action, Defendant Donald D. Bruce was
28 employed by the CDCR and was a Correctional Counselor at PBSP. He is sued in his

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1   individual and official capacities.

2       33.    During the period of time relevant to this action, Defendant K. Cruse was
3   employed by the CDCR and was a Correctional Counselor at PBSP. He or she is sued in his
4   or her individual and official capacities.

5       34.    During the period of time relevant to this action, Defendant M. Piland was
6   employed by the CDCR and was a Sergeant in the Investigative Services Unit ("ISU") at
7   PBSP. He is sued in his individual and official capacities.

8       35.    The Defendants referenced below, in paragraphs 36 through 49 were not served
9   with Plaintiff's initial Complaint because their acts depriving Plaintiff of his constitutionally
10  protected liberty interest were conducted, entirely or in large measure, after Plaintiff's initial
11  Complaint was filed. They are included in Plaintiff's First Amended Complaint according to
12  the same rationale employed by Court when it determined that Plaintiff stated a cognizable
13  claim for relief for a due process violation against those "who were on the committees that
14  decided to place or retain Lira in administrative segregation." Order of Service at 6.

15      36.    During the period of time relevant to this action, Defendant D. Smith was
16  employed by the CDCR and was a Facilities Captain at PBSP. He is sued in his individual
17  and official capacities.

18      37.    During the period of time relevant to this action, Defendant J. Cox was employed
19  by the CDCR and was a Correctional Counselor or a Facilities Captain at PBSP. He is sued
20  in his individual and official capacities.

21      38.    During the period of time relevant to this action, Defendant R. Pederson was
22  employed by the CDCR and was a Correctional Counselor at PBSP. He is sued in his
23  individual and official capacities.

24      39.    During the period of time relevant to this action, Defendant J. Schwartz was
25  employed by the CDCR and was an Associate Warden at PBSP. He or she is sued in his or
26  her individual and official capacities.

27      40.    During the period of time relevant to this action, Defendant B. O'Neill was
28  employed by the CDCR and was an Assistant Warden at PBSP. He is sued in his individual

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1 and official capacities.

2     41. During the period of time relevant to this action, Defendant Richard Kirkland was

3 employed by the CDCR and was an Associate Warden or Warden at PBSP. He is sued in

4 his individual and official capacities.

5     42. During the period of time relevant to this action, Defendant Steve R. Moore was

6 employed by the CDCR and was Warden at DVI. He is sued in his individual and official

7 capacities.

8     43. During the period of time relevant to this action, Defendant Victor Almager was

9 employed by the CDCR and was an Associate Warden at DVI. He is sued in his individual

10 and official capacities.

11     44. During the period of time relevant to this action, Defendant K. Slatten was

12 employed by the CDCR and was a Facility Captain at DVI. He is sued in his individual and

13 official capacities.

14     45. During the period of time relevant to this action, Defendant L. Olivas was

15 employed by the CDCR and was a Facility Captain at DVI. He is sued in his individual and

16 official capacities.

17     46. During the period of time relevant to this action, Defendant P.S. Nowling was

18 employed by the CDCR and was a Correctional Counselor at DVI. He is sued in his

19 individual and official capacities.

20     47. During the period of time relevant to this action, Defendant S. Dwight was

21 employed by the CDCR and was a Correctional Counselor at DVI. He is sued in his

22 individual and official capacities.

23     48. During the period of time relevant to this action, Defendant M. Day was

24 employed by the CDCR and was an Institutional Gang Investigator at DVI. He or she is

25 sued in his or her individual and official capacities.

26     49. During the period of time relevant to this action, Defendant J. Maykel was

27 employed by the CDCR and was an Institutional Gang Investigator at DVI. He is sued in his

28 individual and official capacities.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

FIRST AMENDED COMPLAINT         C 00-905 SI

-6-

1    50.  At all times relevant to the events described herein, all of the Defendants have

2    acted under color of state law, in the course and scope of their employment.

3    51.  Plaintiff is informed and believes, and on the basis of such information and belief

4    alleges, that each of DOES 1 through 15 is responsible in some manner for the injuries

5    alleged in this Complaint.  The true names and capacities of said DOES 1 through 15, are

6    presently unknown to Plaintiff, who therefore sues DOES 1 through 15 by such fictitious

7    names and will seek leave to amend this Complaint to add their true names and capacities

8    when the same have been ascertained.

9

10                          **STATEMENT OF CLAIM**

11    52.  Defendants imposed and are imposing atypical and significant hardship on

12    Plaintiff in relation to the ordinary incidents of prison life by confining him in DVI

13    administrative segregation ("Ad Seg") and in the Pelican Bay security housing unit ("SHU")

14    for more than eight years.  In Ad Seg, Plaintiff was locked in a windowless cell for twenty-

15    two and one-half hours each day, every day of the year.  There he had minimal yard time (at

16    DVI approximately one and one-half hours each week), he was denied for many years all

17    educational programs, he could not work or accrue work credits, and he was disallowed

18    contact visits or telephone access.  He has suffered severe anxiety and has been diagnosed

19    with, and treated for, post-traumatic stress disorder as a result of his eight years of Ad Seg

20    confinement.  This long-term deprivation of Plaintiff's constitutionally protected liberty

21    interest was supported by no reliable evidentiary basis, and was executed without the

22    procedure required by the Due Process Clause of the Fourteenth Amendment to the United

23    States Constitution.  For ten months Plaintiff was denied the opportunity to review all of the

24    evidence relied upon to confine him in Ad Seg as a prison gang affiliate, he was never

25    granted a hearing or any meaningful opportunity to present his views, and, despite Plaintiff's

26    requests, the periodic reviews by Defendant prison officials failed to consider the evidentiary

27    basis for his confinement or engage in any meaningful review of his classification.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1

## FACTUAL ALLEGATIONS

2    53.    Plaintiff was transported to DVI reception center on October 31, 1995, following

3    the completion of a criminal trial at Sacramento County Superior Court.  On December 28,

4    1995, Plaintiff was handcuffed and removed from the DVI general population and placed in

5    Ad Seg in DVI's K-Wing. For the duration of his sentence Plaintiff would remain confined

6    in Ad Seg, first at DVI and then at Pelican Bay.[1]

7    54.    Plaintiff was informed by Defendant S. Herrera that his Ad Seg confinement was

8    ordered by Defendant W.J. Olmsted, who, upon information and belief, had been informed

9    by Defendant B. Fielder of the Investigative Services Unit that Plaintiff was a validated

10   member or associate of the Northern Structure Prison Gang.  Plaintiff had no prior

11   knowledge of the validation, he was not informed of any evidence supporting the validation,

12   and he had no meaningful opportunity to challenge the validation.  Defendant Herrera

13   instructed Plaintiff to sign a CDCR Form 114-D ("114-D") ("Order and Hearing for

14   Placement in Segregated Housing") which was already filled out.  Plaintiff signed the 114-

15   D, having been assured by Defendants Fielder and Herrera that the DVI Institutional

16   Classification Committee ("ICC") would soon review and evaluate his central files ("C-

17   Files") to determine whether the validation was proper, and would provide Plaintiff with an

18   opportunity to review any evidence supporting his validation and to present his position.

19   Plaintiff did not understand his signing of the 114-D to waive his due process rights, and he

20   consistently informed Defendants at each committee review and at every opportunity that he

21   demanded (1) all evidence supporting the validation underlying his Ad Seg confinement,

22   (2) a hearing concerning his Ad Seg confinement,[2] and (3) the aid of a staff assistant and

23   investigative personnel.

24   55.    The 114-D that Plaintiff was instructed to sign on December 28, 1995, indicated

25

26   [1]The bulk of that time was spent in the Pelican Bay Security Housing Unit ("SHU"), the equivalent of Ad Seg conditions of confinement at California's highest security prison.

27   [2]Plaintiff wanted access to the evidence before a hearing, so that he could understand
28   the claims against him and adequately prepare to challenge those claims.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1    that he was "entitled to a written decision including references to the evidence relied upon
2    and the reasons for such confinement" and that "[p]rior to initial placement, or within 48
3    hours of such placement, an inmate is entitled to written notice of the reasons for placement
4    in sufficient detail to enable the inmate to prepare a response or defense." Defendants
5    contravened CDCR regulations by providing no reference to any evidence relied upon other
6    than a meaningless statement that the DVI Investigative Services Unit ("ISU") "informed
7    [Defendant Olmsted] that [Plaintiff was] a validated Northern Structure associate."

8        56.    On January 4, 1996, Plaintiff appeared before the DVI ICC for an initial review
9    of his Ad Seg confinement. The ICC panel included Defendants E. Alameida, Jr., D. Busser,
10   and J. Chavez. Plaintiff denied any involvement with the Northern Structure Prison Gang,
11   and pointed out that he had no record of violence and no recent disciplinary infractions
12   (CDCR Form 115s) in his files. He demanded that he be shown the evidence supporting his
13   validation and Ad Seg confinement. Plaintiff was informed that his C-Files had not been
14   available to the ICC, and that a review of his validation or a confirmation of his status could
15   not be made until the ICC was in possession of the relevant files. Despite the absence of any
16   reliable evidence, the ICC at this stage ordered the continuation of Plaintiff's Ad Seg
17   confinement. Plaintiff's requests for (1) all documentation related to his validation, (2) a
18   staff assistant to help file a grievance, (3) an investigative employee to aid in obtaining
19   evidence and interviewing witnesses, and (4) a hearing before the Institution Gang
20   Investigator concerning his validation, were summarily denied and he was returned to his
21   cell within approximately five minutes.

22       57.    Plaintiff's Ad Seg confinement continued, and on February 8, 1996, Defendants
23   D. Schmidt, J. Chavez and D. Busser conducted a 30-day ICC review. Upon information
24   and belief, no investigation or review of Plaintiff's alleged validation was conducted, yet
25   Defendants nonetheless ordered the continuation of Plaintiff's Ad Seg confinement.
26   Plaintiff was not present at the review due to an unrelated court appearance.

27       58.    Upon his return to DVI on February 29, 1996, Plaintiff was again confined in Ad
28   Seg. Plaintiff refused to sign a new 114-D prepared and endorsed by Defendant Olmsted,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    fearing that he would waive his right to a hearing.  Defendant Herrera informed Plaintiff that

2    a refusal to sign the 114-D could lengthen his Ad Seg confinement.  Plaintiff requested that

3    Defendant J. Chavez provide him with any evidence relied upon in confining him to Ad Seg.

4    As before, no evidence was provided and no hearing conducted.

5         59.    On March 7, 1996, Plaintiff appeared for a 30-day review of his Ad Seg

6    confinement before an ICC panel including Defendants D. Schmidt and J. Chavez.  Plaintiff

7    again noted that his C-Files reflected no violence or disciplinary infractions, and repeated his

8    demands for evidence pertaining to his validation, for a hearing, for a staff assistant and

9    investigative employee.  Plaintiff also delivered a CDCR Form 602 Inmate Appeal ("Inmate

10   Appeal" or "grievance") to Defendant J. Chavez requesting the evidence supporting his

11   alleged validation as a prison gang associate.  Defendant Schmidt indicated that there was in

12   his files a CDCR Form 128B-2 ("128B-2") dated July 2, 1993, that purportedly validated

13   him as a prison gang member, and that it needed to be reviewed to determine Plaintiff's

14   status.  Plaintiff was further informed by Defendant D. Schmidt that after Plaintiff's return

15   from another unrelated court appearance "all this would be cleared up."   Within

16   approximately five minutes, Plaintiff had been returned to his cell.  The ICC panel sought a

17   90-day extension of Plaintiff's Ad Seg confinement, which was approved on April 3, 1996,

18   in order "to allow completion of gang validation process."

19        60.    Plaintiff was later informed by Defendant J. Chavez in general terms that one of

20   the documents ("128B chronos") cited in the 128B-2 related information allegedly provided

21   by R. Romero, an officer at the Merced County Sheriff's Department.  Plaintiff also learned

22   that a drawing with gang symbols had been attributed to him, and that the drawing was also

23   cited in the 128B-2.  He was eventually granted access to the above-mentioned documents,

24   but it was not until he had been confined in Ad Seg for nearly ten months that Plaintiff was

25   able to review all of the evidence supporting his validation.

26        61.    On April 4, 1996, an ICC panel including Defendants D. Schmidt, D. Busser and

27   J. Chavez conducted a 30-day review and ordered the continuation of Plaintiff's Ad Seg

28   confinement.  Upon information and belief, the reliability of any evidence in support of such

FIRST AMENDED COMPLAINT                    C 00-905 SI

-10-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1 confinement was not reviewed.

2     62. On June 20, 1996, Plaintiff returned from an unrelated court appearance and was

3 immediately returned to Ad Seg confinement. The 114-D once again failed to refer to any

4 specific evidence justifying Ad Seg confinement, much less a showing of such evidence in

5 sufficient detail to enable Plaintiff to prepare a response or defense. The form offered only

6 the meaningless statements that Plaintiff was in Ad Seg before he left for court, and that

7 "information obtained from DVI ISU indicated that you are a validated 'Northern Structure'

8 gang associate."

9     63. On June 27, 1996, Plaintiff appeared before an ICC panel including Defendants

10 D. Busser, D. Schmidt and J. Chavez for an initial review of his Ad Seg confinement.

11 Plaintiff repeated his demands for evidence, a hearing, a staff assistant and investigative

12 employee. He complained that the ICC had been giving him "the run-around"—confining

13 him in Ad Seg but refusing to provide any evidentiary basis for such confinement. Plaintiff

14 informed the panel that to the extent it was relying on an alleged statement of Officer

15 R. Romero from the Merced County Sheriff's Department, that reliance was improper

16 because Officer Romero had informed Plaintiff that he had not identified Plaintiff as a

17 member or associate of a prison gang, and had written a letter to DVI to that effect. Within

18 approximately five minutes, the ICC panel had denied Plaintiff's requests, and while

19 acknowledging that it had not yet reviewed Plaintiff's C-Files "for prison gang

20 membership," nonetheless ordered the continuation of his Ad Seg confinement, and returned

21 him to his cell.

22     64. On July 25, 1996, Plaintiff appeared before an ICC panel including Defendants

23 D. Schmidt, D. Busser, and K. Mann for a 30-day review. Plaintiff's demands for evidence

24 and a hearing were ignored. After seven months in Ad Seg, the ICC had finally reviewed

25 Plaintiff's C-Files, and had ordered a current CDC Form 128B-2 via the ISU. Plaintiff had

26 no opportunity to review or participate in the preparation of the 128B-2, and upon

27 information and belief, the proper procedural safeguards in the validation process were not

28 observed. Despite the absence of a completed 128B-2 (or the supporting 128B chronos)

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1  validating Plaintiff, and despite Defendant Busser's observation at the review that Plaintiff's

2  C-Files did not demonstrate that Plaintiff was a threat to staff or other inmates, the ICC

3  revealed that it had nonetheless made up its mind, stating: "ICC has reviewed the C-File and

4  the SSU 128B-2 chrono has been ordered via ISU. Upon its receipt, RC processing will be

5  completed and the case referred to CSR for endorsement and transfer to PBSP-SHU on

6  Indeterminate SHU status based on validated gang membership in the Northern Structure

7  Prison Gang." Defendant Busser relayed that determination to Plaintiff during the review,

8  responding to Plaintiff's request to be released from Ad Seg by telling him that the only

9  place he would be going is to the SHU at Pelican Bay. Ad Seg confinement having been

10  assigned on an indeterminate basis, in the absence of any reliable evidentiary basis and

11  without any type of hearing, Plaintiff was back in his cell within approximately five minutes.

12  65. On July 27, 1996, Plaintiff requested an interview with Defendant K. Mann to

13  review any 128B chronos and $1030s^3$ relied upon to validate him or otherwise confine him in

14  ·Ad Seg. Defendant K. Mann declined the interview and informed Plaintiff on July 30, 1996,

15  that "[w]hen your 128B-2 is received from SSU we will also receive supporting documents

16  and you will be served 1030's."

17  66. On July 29, 1996, after seven months of Ad Seg confinement and now aware that

18  despite critical evidentiary and procedural shortcomings the ICC intended to transfer him to

19  Pelican Bay for indeterminate Ad Seg confinement, Plaintiff filed an Inmate Appeal

20  challenging his Ad Seg confinement and the evidentiary basis for the underlying validation.

21  The grievance specifically requested that Plaintiff be released from Ad Seg and that 128B

22  chronos supposedly supporting his gang validation—those he had been able to review and

23  any others he had not yet been granted access to—be removed from his C-Files. Ex. 1 at 1.

24  Plaintiff also noted that he had not been provided with the type of details concerning his

25  validation that would enable him to prepare for a hearing. *Id*. at 3.

26

27  [3]CDCR Form 1030 is a confidential information disclosure form that references the
28  nature of a confidential statement without identifying the informant.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    67. On August 22, 1996, Plaintiff appeared before an ICC panel including
2 Defendants D. Busser, D. Best, and K. Mann. Plaintiff repeated his requests for all the
3 evidence relied upon to validate him and for a hearing. Defendants acknowledged that the
4 ICC still did not have access to "the documents utilized by SSU to validate inmate."
5 Defendant D. Best informed Plaintiff that she had received his Form 602 Appeal and that she
6 would review his grievance.

7    68. On August 23, 1996, Plaintiff was interviewed by Defendant D. Best. Plaintiff
8 informed her again that any alleged statements made by Officer R. Romero were not reliable
9 and again sought access to all evidence used to support his Ad Seg confinement. In her
10 denial of Plaintiff's Inmate Appeal, Defendant Best noted that the ICC had not been able to
11 verify Plaintiff's validation status because it had not received Plaintiff's C-Files until
12 July 25, 1996. *Id.* at 9. She further observed that in reviewing the C-Files it was apparent
13 that the validation dated July 2, 1993, did not meet validation requirements and that the ISU
14 had been contacted to investigate Plaintiff's status and to complete a current 128B-2. She
15 noted that "[t]o date this chrono has not been received at DVI." *Id.* Although she had no
16 evidence to rely on, Defendant Best nonetheless denied Plaintiff's grievance "since staff
17 believes you are an associate member of this prison gang . . ." *Id.* Plaintiff appealed that
18 decision on September 2, 1996, commenting that the 1993 validation was "all wrong" as
19 Defendant Best herself had noted.

20    69. Upon information and belief, on September 4, 1996, unbeknownst to Plaintiff,
21 Defendant Olson of the Investigative Services Unit "revalidated" Plaintiff as a Northern
22 Structure Prison Gang associate. The materials on which the revalidation was based were
23 reported to be the contents of a "gang validation package" dated June 22, 1993. Although
24 apparently in the CDCR system for more than three years, Plaintiff had been afforded no
25 reasonable notice of the claims against him, had not been provided with all the evidence
26 supporting the validation (or revalidation), and had not been given a hearing. This
27 "revalidation," in turn, was the basis for the denial of Plaintiff's grievance at the second
28 formal level review by the DVI Warden, Defendant E. Alameida, Jr., on September 27,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1    1996. The Warden's response, prepared by N. Kramer in consultation with Defendant
2    K. Mann, indicated that an updated 128B-2 had been filed on September 4, 1996, validating
3    Plaintiff and making his "indeterminate placement" in Ad Seg appropriate. *Id.* at 11. Upon
4    information and belief, no inquiry was made into the reliability of the evidence used for the
5    revalidation, even though the documents referenced were more than three years old and even
6    though their reliability had been directly called into question in Plaintiff's grievance.

7    70. On September 19, 1996, Plaintiff appeared before an ICC panel including
8    Defendants D. Busser, D. Best, and K. Mann. As planned, having received the updated
9    128B-2 , the ICC elected to impose an indeterminate SHU term at Pelican Bay. Plaintiff's
10   requests for all the evidence and for a hearing were denied. Defendant Best acknowledged
11   at that session that the validation did not meet departmental requirements, but Defendant
12   Busser informed the panel that any such problems had since been "taken care of" with the
13   updated 128B-2. No copy of the 128B-2 (or any supporting evidence) was provided to
14   Plaintiff. Within approximately five minutes, Plaintiff had been escorted back to his cell.
15   The next day, the DVI CSR endorsed an indeterminate SHU confinement. Three days later,
16   on September 23, 1996, Plaintiff was transferred to the Pelican Bay SHU, where he
17   continued to be confined in a windowless cell for twenty-two and one-half hours each day,
18   and continued to be deprived of work or educational programs.

19   71. On September 27, 1996, Plaintiff appeared before the PBSP Unit Classification
20   Committee ("UCC") for his initial review. The Committee panel included Defendants
21   C. Bolles and B. Heaps. Plaintiff demanded that Defendants provide him with any and all
22   evidence supporting his validation, and with the due process protections denied him at DVI.
23   Without reviewing the reliability of the evidence underlying the validation Defendants
24   denied Plaintiff's demands and instead advised him to pursue a "debriefing" procedure—to
25   reduce his own SHU confinement by informing on other inmates. When Plaintiff disavowed
26   any knowledge concerning Northern Structure Prison Gang members, Defendants intimated
27   that he could make something up. At every ICC or UCC review thereafter, Plaintiff was
28   informed that "debriefing" was his only way out of the SHU.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1       72.     On October 18, 1996, in an Olson review conducted with Defendant B. Heaps,

2   Plaintiff was provided copies of all of the evidence relied upon in validating him as a

3   Northern Structure Prison Gang associate—including the 128B-2 and 128B chronos, and a

4   1030 confidential information disclosure indicating that "during a debriefing, an inmate

5   identified you as a Northern Structure." This was the first time, nearly ten months into his

6   Ad Seg confinement, that Plaintiff was able to review the 1030 disclosure relied upon to

7   validate him. Plaintiff showed Defendant B. Heaps his Inmate Appeal (he had received the

8   second formal level response several days prior) and indicated that this was the first time he

9   had seen some of the documents, and the first time he had even heard about a Confidential

10  Memorandum dated September 25, 1992. Defendant Heaps agreed that Plaintiff should

11  persist with his Inmate Appeal, observing that it was a particularly weak validation.

12      73.     When Plaintiff was finally able to review all of the evidence supporting his

13  validation and Ad Seg confinement, his concerns about the nature and reliability of the

14  evidence—as voiced at ICC panel reviews and in his Inmate Appeal—were immediately

15  confirmed. Upon information and belief, the validation was based upon a Confidential

16  Memorandum dated September 25, 1992, and two 128B chronos dated May 10, 1993. One

17  of the 128Bs was based on statements allegedly made by Officer R. Romero, which Officer

18  Romero had later contradicted, and the other described a gang-related drawing that bore no

19  indications that it was made by Plaintiff. In addition, Plaintiff is informed and believes that

20  the Confidential Memorandum was uncorroborated at the time it was filed. Convinced there

21  was no reliable evidentiary basis for his Ad Seg confinement, Plaintiff appealed his

22  grievance to the Director's Level review, where his appeal issue was framed as follows:

23  "Whether or not the institution's denial of appellant's request to release him to the general

24  population and remove all gang related information from his Central File (C-File) is

25  appropriate." *Id*. at 12. Relying on the September 4, 1996 revalidation, the Director's office

26  denied Plaintiff's appeal on January 24, 1997. Although Plaintiff indicated during an

27  interview with Appeal Examiner H. Bard that a simple telephone call to Officer Romero

28  would demonstrate that the evidence was unreliable, the Director's Level response held that

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1  "appellant fails to provide convincing proof that he was inappropriately removed from the

2  general population." *Id.* at 14. Copies of the Director's denial were sent to DVI and PBSP.

3       74.  Plaintiff reported the fundamental problems with the evidence underlying his Ad

4  Seg confinement to Pelican Bay ICC and UCC review panels, including but not limited to

5  the ICC annual review conducted on February 20, 1997, by Defendants A. Scribner,

6  J. Stokes, C. Bolles, and B. Heaps. Defendants responded that Plaintiff's Inmate Appeal had

7  been reviewed and denied, indicating that his confinement in the SHU was more than

8  justified.[4]  Plaintiff believed that the unreliability of the evidence would have been

9  discovered during a reasonable review or investigation, but he could not persuade

10 Defendants to listen to his arguments or review the evidence. Even after Plaintiff produced a

11 letter from Officer R. Romero indicating that he had no record Plaintiff's association with

12 the Northern Structure Prison Gang while housed in the Merced County facilities, and even

13 after the authenticity of the letter had been verified by Defendant M. Piland, Defendants

14 continued to rely on an inadequate evidentiary basis to confine Plaintiff in Ad Seg for a total

15 of more than eight years.

16      75.  When Plaintiff produced the letter from Officer Romero contradicting one of the

17 128B chronos at a UCC Review before Defendants J. Stokes, C. Patten, and D. Bradbury in

18 March 1998, he was told that the letter did not change anything, and that if he wished to he

19 could file an Inmate Appeal. Plaintiff initiated the grievance process seeking to be released

20 from Ad Seg and to have Officer Romero's letter entered in his C-Files. On August 6, 1998,

21 Defendant M. Piland denied Plaintiff's grievance at the first formal level of review, stating

22 that the evidentiary basis for Plaintiff's validation was appropriate notwithstanding Officer

23 Romero's letter, but he confirmed the authenticity of the letter and indicated that it would

24 become part of Plaintiff's C-Files as an attachment to the Inmate Appeal. Plaintiff appealed

25 to the Warden's Level, where his grievance was denied for the same reasons on September

26 21, 1998. Plaintiff did not complete the grievance process because Officer Romero's letter

27

28      [4]The same observation was repeated at a number of subsequent ICC and UCC reviews.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1   had been attached to his files to his satisfaction (via the Inmate Appeal), and he realized that
2   all other aspects of his grievance—including Officer Romero's refutation of the 128B
3   chrono—had already been addressed and fully exhausted through his July 29, 1996 Inmate
4   Appeal.

5   76. The ongoing failure to review the reliability of the evidentiary basis for Plaintiff's
6   Ad Seg confinement or to afford him a forum in which to present his views was carried out
7   by numerous PBSP UCC or ICC review panels that were conducted between Plaintiff's
8   arrival September 1996 transfer and his parole in April 2004. These panels continued to rely
9   on evidence Plaintiff challenged in his July 1996 Inmate Appeal. The reviews ordering
10  Plaintiff's continued Ad Seg confinement without a proper evidentiary basis and without
11  affording him a hearing or any meaningful opportunity to present a defense included the
12  following:

- February 20, 1997—Annual review before an ICC panel including Defendants
   A. Scribner, J. Stokes, C. Bolles, and B. Heaps.
- August 5, 1997—120-day review before a UCC panel including Defendant
   C. Patten.
- March 31, 1998—Initial review before a UCC panel including Defendants
   J. Stokes, C. Patten, and D. Bradbury.
- May 14, 1998—120-day review before a UCC panel including Defendant
   M. Nimrod.
- September 24, 1998—120-day review before a UCC panel including Defendant
   J. Briddle.
- December 8, 1998—Annual review before an ICC panel including Defendants
   A. Scribner, J. Briddle, M. Nimrod, and D. Bruce.
- April 6, 1999—120-day review before a UCC panel including Defendant D. Smith.
- August 10, 1999—120-day review before a UCC panel including Defendants
   D. Smith and K. Cruse.
- November 17, 1999—Annual review before an ICC panel including Defendant

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1  K. Cruse. At this review the panel acknowledged that Plaintiff's validation was

2  called into question by the apparent conflict between Officer Romero's letter and

3  one of the 128B chronos. Plaintiff was informed that he would be reviewed for

4  inactive status. Inactive status was denied on April 4, 2000, upon information and

5  belief due to a Confidential Memorandum dated April 1, 1998, which allegedly

6  indicated Plaintiff was an active associate of the Northern Structure Prison Gang.

7  Plaintiff had not been apprised of this Confidential Memorandum until his inactive

8  status review, and believes it to be inaccurate and inadequately corroborated.

9  • May 31, 2000—180-day review before a UCC panel including Defendants

10  D. Martin and D. Smith.

11  • November 8, 2000—Annual review before an ICC panel including Defendants

12  J. Schwartz and J. Cox.

13  • May 15, 2001—180-day review before a UCC panel including Defendants

14  D. Smith, R. Pederson, and J. Cox.

15  • October 17, 2001—Annual review before an ICC panel including Defendants

16  J. Schwartz, R. Pederson, and J. Cox.

17  • April 9, 2002—180-day review before a UCC panel including Defendants J. Cox,

18  S. O'Dell, and R. Pederson.

19  • October 16, 2002—Annual review before an ICC panel including Defendants

20  R. Kirkland and J. Cox.

21  • April 8, 2003—180-day review before a UCC panel including Defendants J. Cox

22  and B. Rose.

23  • September 10, 2003—Annual review before an ICC panel including Defendants

24  B. O'Neill, D. Marvin, and J. Cox.

25  • March 30, 2004—180-day review before a UCC panel including Defendants

26  J. Cox, S. O'Dell, and D. Marvin.

27  77. On March 14, 2000, Plaintiff filed his initial Complaint in this action. The Court

28  served many of the aforementioned Defendants with Plaintiff's due process claim on

FIRST AMENDED COMPLAINT                C 00-905 SI

-18-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1   January 22, 2001, but ultimately dismissed Plaintiff's case without prejudice upon
2   Defendants' motion for summary judgment, on May 17, 2002, concluding that Plaintiff had
3   not exhausted his administrative remedies surrounding his "retention" in Ad Seg by various
4   ICC and UCC panels.

5       78.    Although Plaintiff's understanding and belief is that he had fully exhausted
6   available administrative remedies for all aspects of his improper Ad Seg confinement, he
7   pursued another Inmate Appeal on November 18, 2002, challenging the improper basis for
8   his validation and the failure of the ICC/UCC reviews to engage in any meaningful
9   consideration of the appropriateness of Plaintiff's confinement. Plaintiff's grievance was
10  denied at each level of review. On December 24, 2002, at the first formal level review,
11  Defendant J. Cox denied Plaintiff's Inmate Appeal, noting that "[t]he original validation
12  documents remain unchanged. You have not provided any new information that would
13  warrant any different decision relative to your current PBSP-SHU indeterminate placement."
14  Ex. 2 at 4. The Warden's Level review, conducted by Defendant J. Schwartz on behalf of
15  Warden Joe McGrath on February 3, 2003, reached the same conclusion and warned that
16  future appeals focusing on Plaintiff's validation documentation would be rejected. *Id*. at 6.
17  Plaintiff's grievance was denied at the Director's Level on May 21, 2003. *Id*. at 7.

18      79.    Plaintiff was released from prison on parole on April 14, 2004, but subsequently
19  had his parole revoked, and was transported to DVI on May 13, 2005, where he was
20  immediately removed to Ad Seg on the basis of his validation as an associate of the Northern
21  Structure Prison Gang.

22      80.    The same pattern that characterized his prior Ad Seg confinement re-emerged at
23  DVI. Even though Plaintiff has consistently addressed the deficient evidentiary basis for Ad
24  Seg confinement and the failure to afford him due process at each ICC review, Defendants
25  still—ten years later—persist in depriving Plaintiff of his constitutionally protected liberty
26  interest. Plaintiff was informed that he is again being reviewed for inactive status, but has
27  received no further information and has no observed no signs of progress toward his release
28  from Ad Seg.    The recent DVI ICC reviews ordering Plaintiff's continued Ad Seg

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

FIRST AMENDED COMPLAINT                                    C 00-905 SI

-19-

1  confinement without a proper evidentiary basis and without affording him a hearing or any
2  meaningful opportunity to present a defense include the following:

3  • May 19, 2005—Initial review before an ICC panel including Defendants
4  V. Almager, L. Olivas, B. Fielder, J. Maykel and S. Dwight.

5  • September 28, 2005—Initial review before an ICC panel including Defendants S.R.
6  Moore, K. Slatten, J. Chavez, J. Maykel, and P. Nowling.

7  • April 20, 2006—Initial review before an ICC panel including Defendants S.R.
8  Moore, K. Slatten, J. Chavez, P. Nowling, B. Fielder, and M. Day.

9  81. Plaintiff began treatment for severe anxiety and post-traumatic stress disorder in
10 Spring, 2005. He believes that his condition is the direct result of his long-term Ad Seg
11 confinement.

12 82. Plaintiff remains confined in Ad Seg at the filing of this Amended Complaint;
13 still without an adequate evidentiary basis, and still without having been afforded the
14 opportunity to challenge the reliability of his Ad Seg confinement or the underlying
15 validation.

16

17 **CLAIM FOR RELIEF**

18 83. Plaintiff supports the following claim by reference to the previous paragraphs of
19 this Amended Complaint.

20 84. Defendants' confinement of Plaintiff in Ad Seg for more than eight years
21 imposed atypical and significant hardship in relation to the ordinary incidents of prison life,
22 thus depriving him of a liberty interest of real substance. Defendants have thus deprived
23 Plaintiff of his constitutionally protected liberty interest without affording him the procedure
24 required by the Due Process Clause of the Fourteenth Amendment to the United States
25 Constitution, and without the reliable evidentiary basis required by the Due Process Clause
26 of the Fourteenth Amendment to the United States Constitution.

27 85. As a proximate result of Defendants' conduct, Plaintiff has suffered and
28 continues to suffer severe anxiety. He has been diagnosed with post-traumatic stress

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  disorder and is currently being treated with psychiatric medications.

2  86.  In acting as described herein above, Defendants have acted knowingly, willfully,
3  and maliciously, or with reckless or callous disregard for Plaintiff's federally protected
4  rights.

5

6  **PRAYER FOR RELIEF**

7  WHEREFORE, Plaintiff respectfully prays that this Court:

8  87.  Declare that the acts and omissions described herein violated Plaintiff's rights
9  under the Constitution and laws of the United States.

10  88.  Enter preliminary and permanent injunctions ordering Plaintiff's release from his
11  indeterminate Ad Seg confinement on the basis of the inadequate evidence relied upon to
12  date; ordering that such unreliable validation evidence be expunged from Plaintiff's C-Files;
13  ordering that Defendants release inmates from Ad Seg if evidence supporting Ad Seg
14  confinement on the basis of gang validation is not provided within 72 hours; ordering that
15  Defendants cease pressuring inmates to waive their rights to a hearing upon placement in Ad
16  Seg and cease requiring inmates to "debrief" in order to secure their constitutionally
17  protected liberty interest.

18  89.  Enter judgment in favor of Plaintiff for nominal, compensatory, and punitive
19  damages, as allowed by law, against each Defendant, jointly and severally.

20  90.  Award attorney fees and costs.

21  91.  Order such additional relief as this Court may deem just and proper.

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                                   C 00-905 SI
-21-

1    DATED:  June 28, 2006.

2                                        Respectfully,

3                                        DOUGLAS A. WINTHROP
                                         ROBERT D. HALLMAN
4                                        HOWARD RICE NEMEROVSKI CANADY
                                            FALK & RABKIN
5                                        A Professional Corporation

6
                                         By: _____
7                                                ROBERT D. HALLMAN

8                                        Attorneys for Plaintiff ERNESTO G. LIRA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

EXH. 1 PG. B

**STATE OF** (

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

SEP 13 1996

AUG 1996

Institution/Parole Region: DVI
Log No. 96-1026
Category: 2

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Ernesto Lira | H-36693 | Ad. / Seg | K-W-333 |

A. Describe Problem: The following is my appeal for this lock up order "114D". And the so call validation chrono's being used. Dated 12-28-95. First of all, I paroled from "S.C.C." 5-14-93. *(2) I was never made aware either by "S.C.C.", or parole officer that I was being validated. *(3) basis of this appeal. I was a level one, and was in the camp-program. *(4) In my C.D.C. file; I have no "115Teens" for being a gang-member, or a gang-banger, or any 115Teens to support this aforemention "114D".

If you need more space, attach one additional sheet.

B. Action Requested: #1. To be released from Ad/Seg. and returned to G/P. #2. remove all these 128-B from my C.D.C. file. #3. be given a program, and left alone to do my time, Im to old to play games, never hatta.

Inmate/Parolee Signature: Ernesto Lira
Date Submitted: 7-29-96

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____
Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

OCT 23 1996
INMATE APPEALS

Date Submitted: _____
CDC Appeal Number: _____

First Level: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 8/1/96 — Due Date: 8/22/96

Interviewed By:

*See attached*

Staff Signature: Darlene Best  Title: CCII  Date Completed: 8/23/96

Division Head Approved:
Signature: _____  Title: ALW  Returned: AUG 30 1996
Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

I was interviewed on 8-23-96 by Darlene Best C.C.II. I am not satisfied
with her decision. She could not "address" the issue's in my 602 appeal, because
Juv. I is writing on a c.v.c 128B-2 chrono. she stated to me that the
chrono 128-B dated 7-2-93 is all wrong. Then why? Am I still in ad/seg
it is my understanding that this chrono is responsible for my placement in
Signature: Ernesto Rita  Date Submitted: 9-2-96

Second Level: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 9-13-96 — Due Date: 9-27-95
☐ See Attached Letter

Signature: DR Bussu, AW-C  Date Completed: 9-27-96

Warden/Superintendent Signature: Edward S. Alameida, Jr., Warden  Date Returned to Inmate: OCT 02 1996

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

"First of all, to this date, and many request forms later. I have not
recieved the suppose 128 B-2 dated 9-1-96. or any other documentation
relied upon to validate me as something Im not. I am now here at PBSF
shu with un indeterminate shu. These chronos inclosed is all that I
nwe recieved. Directors rule 3000 defines "Gangs" means to engage or have engaged
on behalf of an organization in unlawful acts. I have no serious "115". I am not
satisfied and request a directors review.
Signature: Ernesto Rita  Date Submitted: 10-19-19/96

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other
☐ See Attached Letter
Date: 1-24-97

CDC 602 (12/87)



#5 In one of the chronos#, It states That,
drawing's found in my locker have
my name on Them, and #6 That, I
admitted To drawing Them. #7
"not True" on #5 and #6." my name are
on none of the drawings. #8 I had copys
of about 30 drawings, and out of all of
Them These Two were kept, and never returned.
#9 while in S.C.C. I was found "not guilty"
by I.C.C. of any wrong-doing. #10 I
Past P.F.T. Fire Traning. #11 The I.S.U. (161) D.V.
stated, and I quote, "we ain't the ones lockin
you up some Thing in your file is!" #12 I
was never given That Evidence 24 hours
prior To The "1140" hearing. #13 heres is
another chrono #2 stating That an officer mr.
R. Romero of "merced County Jail" informed
some-one, "chrono" doesn't state who? That In
an associate, and "norte 14" member.
#14 "not-True", I spoke To mr. R. Romero
and he stated, and "I quote," "That, I
remember Teiling some officer From
James-Town That, you were housed
with The "northern inmates". #15 He
Told me That, if any-one had any questio

I never received copy/s of my 1030 forms. Also was denied
an olson-review, because I am an R/C. inmate. Also I
had filed an appeal before this one, and never received it
back.

⑯ #③ chrono supports my statement, that
I was never made aware that, I was being
validated'd. #⑰ so I could not defend, or
be prepared for the hearing, which
never took place. #⑱ If you notice the
dates on chrono #3, I had been paroled
all ready.

⑲ This Ad/seg. placement is real
wrong. And I'm being accused of
some-thing, "I'm not a part of."
This alone, "indangers my life", and
will hold I.C.C. Administration
responsible for this cruel, and
unusual punishment.

#⑳ The above are 18teen basis
for appealing this validation 1140
that has me housed in Ad/seg.
All my basis are fact and can
be produced.

Sincerely

Amato Gina
H-36693   K-333
7-29-96

DEPARTMENT OF CORRECTIONS                                           STATE OF CALIFORNIA

## ORDER AND HEARING FOR PLACEMENT IN SEGREGATED HOUSING

*An inmate is entitled to a written decision including references to the evidence relied upon and the reasons for such confinement. A copy of the completed form must be given to the inmate, a copy placed in the central file, and a copy retained in a central location at the institution.*

FROM: WH-303 to K-

*Prior to initial placement, or within 48 hours of such placement, an inmate is entitled to written notice of the reasons for placement in sufficient detail to enable the inmate to prepare a response or defense.*

**PART I** NOTICE OF REASONS FOR PLACEMENT IN ADMINISTRATIVE SEGREGATION

| NAME | NUMBER | INSTITUTION |
|------|--------|-------------|
| LIRA | H-36693 | DVI/RC |

A determination has been made to place you in segregated housing. The reasons for such placement are:

arrived at Deuel Vocational Institution as a PV/RTC on 10/31/95, from Sacramento County. On 12/27/95 Investigative Services Unit () informed me that you are a validated Northern Structure associate. Per the aforementioned, your continued presence in the RC/GP is a threat to the safety of staff and inmates alike, and to the security of this facility. Per orders of Correctional Lieutenant W. Blasted, you are ordered to Administrative Segregation effective this date 12/27/95, pending review/evaluation of case factors.

W. J. Blasted, Correctional Lieutenant

| INMATE SIGNATURE | | | ☐ Refused to Sign | |
|---|---|---|---|---|
| ☒ Copy Given to Inmate | EMPLOYEE | | | |

*Representation by counsel-substitute is required when it is determined that the inmate is illiterate or that the complexity of the issues makes it unlikely that he/she can collect and present the evidence necessary for an adequate comprehension of the case. This determination must be made at the time of initial placement or within 48 hours of such placement. (Complete both A and B below.)*

**PART II** COUNSEL-SUBSTITUTE

A. STAFF ASSISTANT (Assigned if inmate is illiterate or issues complex.)

☒ Not Assigned                            ☐ Inmate Not Illiterate

☐ Inmate Declines                         ☐ Issues Not Complex

☐ Assigned          (Name) _____

Other Reasons or Comments: NOT ASSIGNED, I/M LIRA READ A PORTION IS ABLE AND HAS TO VARIFY, HE ADVISED HE READS

B. INVESTIGATING EMPLOYEE (Assigned when inmate is not illiterate and issues are not complex but assistance is necessary to enable inmate to collect and present evidence necessary for an adequate comprehension of the case.)

☒ Not Assigned                            ☐ Inmate Declines

                                          ☐ Inmate Able to Collect and Present Evidence

☐ Assigned          (Name) _____

Other Reasons and Comments: LIRA I/M IS ABLE TO READ AND HAS HH ADVISE, THIS ADCUMENT AND HAS ADVISED HE WILL ADVISE I

*An inmate is entitled to a hearing ... placement. The inmate may waive the hearing, waive the 72-hour limitation, or request a continuance beyond the 10-day limitation. Check A, B, C and D if applicable.*

**PART III** WAIVER OF HEARING OR OF TIME TO PREPARE AND REQUEST FOR WITNESSES

A— [X] I understand that I have a right to a hearing concerning my placement in segregated housing and I hereby waive that right.

| NAME | NUMBER | DATE |
| --- | --- | --- |
| | | |

B— [ ] I understand that I have a right to a hearing not less than 72 hours from the time of my placement in segregated housing in order that I might prepare for the hearing. I hereby waive that right and require that my hearing be held as soon as practical.

| NAME | NUMBER | DATE |
| --- | --- | --- |
| | | |

C— [ ] I hereby request that my hearing be continued and not be held before the date of ______

D— [ ] I request the following witness(es):

| NAME | NUMBER | DATE |
| --- | --- | --- |
| | | |

*An inmate is entitled to a fair hearing to be held not less than 72 hours after initial placement in the Segregated Housing Unit unless the inmate requests in writing additional time in which to prepare a defense. (See Part III above.)*

**PART IV** HEARING

A. Hearing Date: [ ] Inmate Present [ ] Inmate Not Present

Hearing Officer(s):

Explain:

B. Counsel-Substitute Present:

[ ] Staff Assistant [ ] Counsel-Substitute Not Present

[ ] Investigating Employee [ ] Inmate Waives Attendance

Other Reasons and Comments:

C. [ ] Witnesses Present [ ] Witnesses Not Requested [ ] Requested and disallowed because presence will be unduly hazardous to institutional safety and correctional goals.

D. Decision:

Basis:

Reasons:

NAME and NUMBER   LIRA, ERNESTO   H-36693                              CDC-128-B (Rev. 4/74)

On Sunday, December 13, 1992, I conducted a search of the locker assigned to Inmate Lira H-36693 dorm 810. During the course of this search, I found and confiscated a drawing, containing numerous symbols associated with the Prison Gang known as the "NORTHERN STRUCTURE". Among these are the number "14" located near the central bottom area of the drawing, a "Northern Star" drawn on a face of a figure near the bottom left/central area, as well as a word "CHINO" located on a figures headband, near the top left. Inmate Lira freely admitted that he created this drawing and requested its return on several occasions. The drawing was given to the Institutional Investigator's office for further review.

Orig: C-file                        R. Gordon
      I.S.U                         Correctional Officer
                                    Calaveras Unit
                                    SCC

DATE      May 10, 1993      (GANG INFORMATION)

                                              GENERAL CHRONO

---

NAME and NUMBER   LIRA, ERNESTO   H-36693                              CDC-128-B (Rev. 4/74)

On April 13, 1993 I received information from Officer R. Romero, of the Merced County Sheriffs Department, who identifies Inmate Lira H-36693 AKA "CHINO" to be an associate of the NORTHERN STRUCTURE Prison Gang, and a member of the NORTE 14. Officer Romero informed me that on April 24, 1992 Inmate Lira along with five other northern Hispanic gang members including Inmate Morales, Juan D-02845 AKA "PULGA" (Validated member of the Northern Structure Prison Gang), approached two Southern Hispanic gang members and was questioning them about there tattoos and where they were from, Romero stated that Lira and Morales were the main instigators of the incident, and Lira stated to Officer Romero that all they wanted to do was to play with them (Southern Hispanics) for a little while because you know when we go to the "PEN" they rush us from the gate.

ATE       May 10, 1993      Continued on page 2

                                              GENERAL CHRONO

5 OK
5

**NAME and NUMBER** _LRA, QCNSLD_ , _436693_

On ~7/2/93~ a gang validation package re S was received from gang investigator _Covello_ at _CCC_. The documents submitted as verification of S's gang affiliation were sufficient to meet Departmental validation requirements. Accordingly, S has been validated as a _Northern Structure_ (member) (associate) (dropout).

J. Olson
Special Service Unit
SSU #3

GANG IDENTIFICATION VALIDATION          GENERAL CHRONO

orig: C-file
cc: subject

DATE: 7/2/93

## DEUEL VOCATIONAL INSTITUTION
Tracy, California

### SUPPLEMENTAL PAGE

**TO:   LIRA, ERNESTO, H-36693**

**RE:**   Appeal Log No. DVI 96-01026

**INMATE INTERVIEWED:**       Inmate was interviewed on 8-23-96 by Darlene Best, CCII, for the first level appeal review.

**APPEAL ISSUE:    CUSTODY/CLASSIFICATION.**       You are appealing your placement in Administrative Segregation (Ad-Seg) and your designation as a prison gang member.  You request release from Ad-Seg and removal of all CDC 128Bs from your Central File.

**APPEAL RESPONSE:**       This matter was reviewed by Darlene Best, Correctional Counselor II, at Deuel Vocational Institution, Reception Center.  Both the informal and formal levels of appeal review were by-passed.

CDC 114D dated 6-20-96 reflects you did not wish to have a CDC 114D hearing.  However, ICC did review the reasons for your placement in Ad-Seg and approved your placement on 6-27-96.  Your retention was based on information provided by ISU at DVI that you are a validated Northern Structure member.  There was no Central File available to verify this information.  On 7-25-96, ICC reviewed your Central File and noted CDC 128-B dated 7-2-93, listing you as a validated associate of the Northern Structure Prison Gang.  Since the CDC 128-B dated 7-2-93 does not meet current departmental validation requirements, ICC directed SSU via DVI/ISU to be contacted to investigate your gang status to determine whether information available meets or does not meet current prison gang validation requirements.  Your status will be reported on a CDC 128 B-2.  You will receive a copy of this chrono.  To date this chrono has not been received at DVI.

Until your gang status is fully investigated and a determination is made by SSU, you are considered a threat to the safety and security of the institution.  As you know, the prison gang known as the Northern Structure does promote violence in the institution.  Since staff believes you are an associate member of this prison gang, your presence in the General Population would jeopardize institutional security and the safety of staff and inmates.

**APPEAL DENIED.** Based on the available information, your request for General Population placement is denied at this time.  However, you will continue to receive regular ICC reviews and a special review once the above mention CDC 128 B-2 is provided.  Furthermore, your request to have all CDC 128Bs removed from  your Central file is denied.  These informative chronos cannot be removed.

*Darlene Best*
**DARLENE BEST**
**Correctional Counselor II**
**DVI-RC**

DEUEL VOCATIONAL INSTITUTION
Tracy, California

SUPPLEMENT PAGE

$C_{10} - 124$

TO: LIRA, E.
H-36693

RE: Appeal Log No.: 96-01026
Second Level Response

**APPEAL DECISION:** Appeal denied.

**INMATE INTERVIEWED:** On 8-23-96, you were interviewed by Darlene Best,
Correctional Counselor II, for a First Level Appeal Review.

**APPEAL ISSUE:** CUSTODY/CLASSIFICATION

You are appealing your placement in the Deuel Vocational Institution (D.V.I.) Administrative
Segregation (Ad. Seg.) unit and the validity of a CDC 128B Chrono dated 7-2-93.

**APPEAL RESPONSE:** The issues in your appeal have been reviewed by N. KRAMER,
Correctional Counselor. A review of this matter, including examination of submitted documents,
consultation with your assigned Correctional Counselor, Ms. Mann and research of your central
file, was conducted for the purpose of the Second Level response.

In her written First Level Review completed 8-23-96, Counselor Best accurately explains the
reasons for your detainment in Ad. Seg. A review of your case determined it was being handled
in compliance with California Code of Regulations (CCR), Title 15, Article 7, Sections 3335,
3336, 3337. More specifically, the following section applies to your case. **CCR section
3338(4)(f) states:**

> **When the reason for an inmate's placement in administrative segregation is
> for nondisciplinary reasons, the hearing will consider all available evidence
> or information relating to the validity of the reasons given for such placement
> as well as the need to retain the inmate in administrative segregation pending
> resolution of the situation of circumstances set forth in the administrative
> segregation order.**

The Institutional Classification Committee (ICC) reviewed your situation and decided to retain
you in Ad. Seg. pending receipt of a new CDC 128B-2 chrono from the Special Services Unit
(SSU) in Sacramento, California. The purpose of this chrono is to accurately evaluate your status

with the Northern Structure Prison Gang (a prison gang known to promote violence in CDC institutions). Department policy dictating the verification process for determining gang status has changed. The CDC 128B-2 dated 7-2-93 does not meet current CDC validation requirements. Thus, requests for an updated chrono were made with SSU. Without the chrono, your gang status was not validated under the current criteria.

Since you have filed your appeal for Second Level Response, the CDC 128B-2 (dated 9-4-96) has been received. This chrono validates you as an associate of the Northern Structure under current criteria. Therefore, your indeterminate placement in Ad. Seg. is appropriate per CCR, Title 15, Article 7. Administrative Segregation, section 3341.5(c)(2)(A):

> **(c) Security Housing Unit (SHU). An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a SHU.**
>
> **(2) Length of SHU Confinement. Assignment to a SHU may be for an indeterminate or for a fixed period of time.**
>
> **(A) Indeterminate SHU Segregation. An inmate assigned to security housing unit on an indeterminate SHU term shall be reviewed by a classification committee at least every 180 days for consideration of release to the general inmate population.**

After a analysis of the available information, your appeal is denied for the reasons explained above. If you are dissatisfied with this decision, you may appeal to the Director's Level, using Section "H" of your CDC form 602.


EDWARD S. ALAMEDA, Jr.                         9/27/96
Warden                                          Date

Title "15"                              1 — 5
see  3341.5  (7)  (A) Factors That I feel have
not been Taken in Consideration in my Case.
Also its stated That a review of my Case
has been done? Then why is it That I Can
not get Chronos or anything That Tells me
"What" has been reviewed. "I've Ask" Since
12-29-1995 "olson review" "1030" discloser" none
of This has been given To me.

·EXH I, P6. I

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                     PETE WILSON, *Governor*



## DEPARTMENT OF CORRECTIONS
P. O. Box 942883
Sacramento, CA 94283-0001


January 24, 1997


Lira, H-36693
Pelican Bay State Prison
P.O. BOX 7000
Crescent City, Ca.  95531-7000


RE:  DIRECTOR LEVEL DECISION
     CASE NO. 9603926
     INSTITUTION LOG NO. 96-1026 DVI

This matter was reviewed on behalf of the California
Department of Corrections (CDC), Inmate Appeals Branch, at
Pelican Bay State Prison (PBSP), on January 13, 1997, by
Appeals Examiner H. Bard.

All submitted documentation and supporting arguments of the
parties have been considered.   To the extent such
documentation and arguments are in accordance with the
findings and conclusions stated herein, they have been
accepted.   To the extent they are inconsistent therewith,
they have been rejected.

<u>ISSUES</u>

Whether or not the institution's denial of appellant's
request to release him to the general population and remove
all gang related information from his Central File (C-File)
is appropriate.

<u>FINDINGS</u>

I


The appellant states that he has been improperly validated
<u>as a Northern Structure (NS) Prison Gang Associate</u>.   He
explains that in the past he was a Level I camp qualified
inmate with no documented gang involvement. He states there
is insufficient justification to validate him as a NS
Associate.   He is requesting return to the general
population and to remove all gang related documentation from
his C-File.

LIRA, H-36693   - CASE NO. 9603926
Page 2

## II

The institution takes the position that since he filed for
this Second Level Response, a September 4, 1996, Special
Services Unit (SSU), CDC Form 128-B-2 has been received.
This chrono validates him as an Associate of the NS under
current criteria.  The appeal was denied at the Second Level
Response after analysis of available information.

## III

The Department's rules regarding Gang Activity, Critical
Case Information and Segregated Housing Program Units, are
contained in the California Code of Regulations (CCR), Title
15, Sections 3023, 3378 and 3341.5:

**3023.  Gang Activity.**
(a)  Inmates and parolees shall not knowingly
promote, further or assist any gang as defined in
section 3000.

**3378.  Critical Case Information.**
Any information regarding an inmate/parolee
which is or may be critical to the safety of
persons inside or outside an institution shall be
documented on a CDC Form 812 (Rev. 4/84 below),
Notice of Critical Case Information--Safety of
Persons and a CDC Form 812-A (Rev. 9/92), Notice
of    Critical    Information--Prison    Gang
Identification; CDC Form 812-B(9/92), Notice of
Critical      Information--Disruptive      Group
Identification; and CDC Form 812-C (4/89), Notice
of  Critical  Information--Confidential  Enemies.
the CDC Forms 812, 812-A, 812-B, and 812-C and all
documents referred to on the forms shall be filed
in the C-File of each identified inmate/parolee.
Any confidential material affecting the critical
case factors of an inmate/parolee shall conform to
the provisions of section 3321.  Entries on these
forms shall not be a substitute for detailed
documentation required elsewhere in the C-File.
(c)   Gang involvement allegations shall be
investigated by a gang coordinator/investigator or
their designee.

**3341.5 Segregated Program Housing Units.**
Special housing units are designated for
extended term programming of inmates not suited
for  general  population.   Placement  into  and
release from these units requires approval by a
classification staff representative (CSR).

(c) Security Housing Unit (SHU). An inmate
whose conduct endangers the safety of others or
the security of the institution shall be housed in
a SHU.

The documentation and arguments presented are persuasive
that the appellant fails to provide convincing proof that he
was inappropriately removed from the general population.

The documentation reveals that on July 2, 1996, an
Institution Gang Investigator collected and documented
information reflecting the appellant's involvement in an
inmate prison gang. That documentation was reviewed by the
Institution Classification Committee. On September 4, 1996,
the documentation was reviewed by a SSU special agent who
confirmed and validated the appellant to be an Associate of
the NS Prison Gang. The appellant's case factors were
reviewed by a Classification Staff Representative, who
subsequently endorsed the appellant to SHU as his conduct
endangered the safety of others and the security of the
institution.

CCR 3023 establishes that "Inmates and parolees shall not
knowingly promote, further or assist any gang..." CCR
3378(c) establishes that "Gang involvement allegations shall
be investigated by a gang coordinator/investigator or their
designee." CCR 3341.5 establishes that "Special housing
units are designated for extended term programming of
inmates not suited for general population. Placement into
and release from these units requires approval by a
classification staff representative (CSR)." CCR 3341.5(c)
establishes that "...An inmate whose conduct endangers the
safety of others or the security of the institution shall be
housed in a SHU."

Based upon the documentation, it is determined that the
actions taken against the appellant were proper and in
accordance with the referenced CCR.

## DETERMINATION OF ISSUE

The institution's denial of appellant's request to release
him to the general population and remove all gang related
information from his C-File is appropriate.

The appeal is denied.

## ORDER

No changes or modifications are required by the institution.

·LIRA, H-36693     CASE NO. 9603926
Page 4

This decision exhausts the administrative remedy available
to appellant within the Department of Corrections.

*HBard*

H. BARD, Appeals Examiner
Inmate Appeals Branch

G. BONNIE GARIBAY, Chief
Inmate Appeals Branch

cc: Warden, PBSP
    Appeals Coordinator, PBSP
    Appeals Coordinator, DVI

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. __PBSP__

Log No. __002-03100__

Category __vocationa__

2. _____

2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| ERNESTO LIRA | H-36693 | | C-10-107 |

A. Describe Problem: THE INSTITUTION CLASSIFICATION COMMITTEE (I.C.C.), AND UNIT CLASSIFICATION COMMITTEE'S (U.C.C.) PERIODIC REVIEWS OF THE "REASONS" FOR APPELLANTS PLACEMENT, AND RETENTION IN ADMINISTRATIVE SEGREGATION (AD. SEC.) (S.H.U.) AT BOTH DEUEL VOCATIONAL INSTITUTION (D.V.I.), AND HERE AT (P.B.S.P.) HAVE DENIED APPELLANT COMPETENT AND/OR MEANINGFUL REDRESS OF THE CHARGES ALLEGED ON THE C.D.C. 114-D LOCK UP ORDER SINCE THE DATE OF 12-28-1995, TO PRESENT.

If you need more space, attach one additional sheet.      (CONTINUED ON ATTACH PG. 2)

B. Action Requested: THAT APPELLANT BE RELEASE FROM THIS FALSE IMPRISONMENT AND TRANSFERED TO GENERAL POPULATION WHERE CAN HAVE ACCESS TO A WORK FURLOUGH PROGRAM. #2. THAT APPELLANT BE GIVEN A REVIEW BY THE P.B.S.P. WARDEN + BE ALLOWED TO PRESENT HIS CASE.

Inmate/Parolee Signature: _____   Date Submitted: 11-18-02

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____      Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____      Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed      CDC Appeal Number:
Board of Control form BC-1E Inmate Claim

NOV 22 2002      JAN 07 2002

First Level ☐ Granted

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _12-2-02_ Due Date: _1-9-03_

Interviewed by: _See Attached_

Staff Signature: _____ Title: _FO(P)_ Date Completed: _12-24-02_

Division Head Approved: _____

Signature: _____ Title: _AW_ Returned Date to Inmate: _12-24-02_
_12/31/02_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

APPELLANT IS DISSATISFIED WITH FIRST LEVELS REVIEW BECAUSE HERE AGAIN THE REVIEWER FAILED TO PRESENT AND DEMONSTRATE THE RELIABILITY OF THE "SOME-EVIDENCE" USED BY THE I.C.C., U.C.C., AND C.S.R. TO VALIDATE, + RETAIN APPELLANT INDETERMINATELY IN P.B.S.P. AD. SEG. S.H.U. YEAR AFTER, SINCE THE DATE OF 12-28-1995 FOR THE FALSE REASONS REFLECTED ON THE C.D.C. 114-D LOCK UP ORDER. IRONICALLY AFTER CONTROVERTING THE SOME-EVIDENCE WITH FACTUAL PROOF THE REVIEWER MADE VAGUE REFERANCE TO A C.D.C. 128-B-2, P.9b, 9-4, JUSTIFYING ITS POSITION +

Signature: _____ Date Submitted: _1-16-2003_

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _1-7-03_ Due Date: _2-5-03_

☒ See Attached Letter

Signature: _B. Lamples, CCII_ Date Completed: _1-28-03_

Warden/Superintendent Signature: _____ Date Returned to Inmate: _FEB 1 0 2003_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

PAGE TWO
C.I.RA H-26693 C 10-107

IN THAT THE REVIEWING COMMITTEE MEMBERS
FIVE MINUTE PAPER SHUFFLING OF APPELLANT'S C.D.C.
CASE RECORD FILE (C-FILE) DURING THE REVIEWS,
AND THE MERE RUBBER-STAMPING OF THE SOME-EVIDENCE
USED TO SUBSTANTIATE A GANG AFFILIATE VALIDATION
HAS DEPRIVED APPELLANT OF PROCEDURAL DUE PROCESS
AND HAS SUBJUCATED HIM TO CRUEL AND UNUSUAL
PUNISHMENT BY THE FALSE IMPRISONMENT HE IS
BEING SUBJECTED TO. IN VIOLATION OF HIS CIVIL
RIGHTS UNDER THE 14TH AMEND. AND 8TH AMEND. OF
THE U.S. CONSTITUTION.

ON 10-16-02, APPELLANT AGAIN APPEARED BEFORE
THE P.B.S.P. I.C.C. FOR HIS ANNUAL REVIEW AND C.D.C.
114-D LOCK-UP ORDER. THE COMMITTEE AGAIN FAILED TO
SHOW AND PROVE TO APPELLANT THE RELIABILITY OF THE
SOME-EVIDENCE USED ERRONEOUSLY TO VALIDATE AND
RETAIN HIM INDETERMINATELY IN AD.SEC. S.H.U. AS
AN ALLEGED GANG AFFILIATE. WITHIN FIVE MINUTES
ALL THAT WAS TOLD TO APPELLANT WAS THAT THE CHARGES
REFLECTED ON THE C.D.C. 114-D DATED 10-10-02
APPEARED TO BE APPROPRIATE, SEE YOU NEXT YEAR.
THUS, AGAIN APPELLANT WAS DENIED THE
OPPORTUNITY TO CHALLENGE THE "SOME-EVIDENCE"
USED BY THE I.C.C. TO SUBSTANTIATE THE FALSE
ALLEGATIONS ON THE C.D.C. 114-D, DENYING HIM
PROCEDURAL DUE PROCESS YEAR AFTER YEAR.

ACTION REQUESTED CONTINUED:

#3. THAT ALL GANG RELATED CHRONOS BE EXPUNGED FROM
HIS C-FILE. #4. THAT ALL C.D.C. 115 RVR WRITTEN UP
FROM THE DATE'S OF 4-1-2000, TO 4-10-2002, BE
EXPUNGED DUE TO THEY BEING PRODUCTS OF RETALIATION.
#5. THAT I BE SHOWN IN PERSON THE RELIABILITY
OF THE SOME-EVIDENCE USED TO VALIDATE APPELLANT
A GANG AFFILIATE.

DATED: NOVEMBER 15, 2002,

APPELLANT

# SUPPLEMENTAL PAGE
## PELICAN BAY STATE PRISON (PBSP)
## FIRST LEVEL REVIEWER'S RESPONSE
## APPEAL # PBSP-C-02-03100 INMATE: LIRA, H-36693

### APPEAL DECISION: DENIED

### APPEAL ISSUE: (Modified)

You are requesting release from the Security Housing Unit (SHU) and placement on the general population (GP). Additionally you request to have all confidential documentation used in the validation process expunged from the Central File (C-File).

### APPEAL RESPONSE:

A review of your appeal has been completed. Your complaint, including your requested remedial action, has received careful consideration. Mr. J. Cox, Correctional Counselor II (CCII), was assigned to investigate your allegations by the First Level Reviewer. CCII Cox interviewed you on December 20, 2002.

During the interview, you related basically the same information as contained in your appeal. You contend you were inappropriately retained on indeterminate status in PBSP-SHU. You claim your validation is inappropriate and that the information used in the validation is also inappropriate. You are requesting the confidential documentation utilized in the validation be expunged from your C-File.

CCII Cox completed a review of your C-File relative to this appeal issue. The C-File contains a California Department of Corrections (CDC) form 128B2, dated September 4, 1996, indicative that you are validated as an associate of the "Northern Structure" (NS) prison gang. Additionally, your C-File is inclusive of a CDC-128B Active/Inactive Gang Status Review dated April 4, 2000. The Active/Inactive review is indicative that there was new information developed as a result of the investigation; a confidential memorandum dated April 4, 1998. The Institutional Classification Committee (ICC) of October 16, 2002, reviewed the aforementioned documents and determined the validation/SHU Indeterminate placement to be appropriate. The Classification Staff Representative (CSR) review completed on November 21, 2002, following the ICC review, re-endorsed you for retention in PBSP-SHU. The CSR reviewed your Classification/validation and indicated the following, in part (Copy attached):

"Inmate remains a threat to the security of the institution by his continuing association with a prison gang engaged in a criminal conspiracy against the safety of others. All referenced documents are present in the file, properly annotated and properly disclosed."

The original validation documents remain unchanged. You have not provided any new information that would warrant any different decision relative to your current PBSP-SHU indeterminate placement. Your contention that you should be released from SHU or that the confidential memorandums utilized in the validation process should be removed from your C-File, is inappropriate and unsupported by any departmental rule.

After close review of this matter, I find that staff have acted appropriately and in accordance with State Law, California Code of Regulations, Title 15, and the Department Operations Manual. There is no evidence to support your claim that continued SHU Indeterminate placement is inappropriate.

Based on the above, your appeal is **DENIED** at the First Level of Review.

| | | | | |
|---|---|---|---|---|
| P. SMITH | 12-24-02 | R. KIRKLAND | 12-24-02 | |
| Facility Captain | Date | Associate Warden | Date | |
| Facility C | | Security Housing Unit | | |

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE FEB 0 3 2003

C-FILE

Inmate LIRA, H-36693
Pelican Bay State Prison
Facility C, Security Housing Unit
Building 10, Cell 107

RE: WARDEN'S LEVEL DECISION
APPEAL LOG NO. PBSP-C-02-03100
C-02-03434

APPEAL: DENIED
ISSUE: CUSTODY/CLASS

This matter was reviewed by JOE MCGRATH, Warden, at Pelican Bay State Prison. J. Cox, Correctional Counselor II, conducted the Appeal interview at the First Level of Appeal Review on December 20, 2002.

## ISSUES

The inmate requests to be released from the Security Housing Unit (SHU) to a General Population (GP) setting, where he could have access to "work furlough." He requests to be permitted to present his case to the Warden. He asks that all gang-related information be removed from his Central File. Also, he requests that all disciplinaries be removed from his Central File from April 1, 2000, through April 10, 2002, as they were issued in retaliation. Additionally, the inmate requests to be personally shown the reliability of the evidence used to validate him as an associate of the Northern Structure prison gang. The inmate has also filed an additional Appeal concerning the Classification Staff Representative (CSR) endorsement of the Institution Classification Committee (ICC) action in this Appeal. These two Appeals are combined and responded to in this response.

## FINDINGS

I

The inmate claims that each year he appears before a Classification Committee to only be told that the validation and supporting documents remain appropriate. The Committee has failed to prove to the inmate the reliability of information used for validation. This failure has denied the inmate the opportunity to challenge the evidence.

II

The First Level Reviewer interviewed the inmate on December 20, 2002. The inmate was advised that his Central File contains a CDC 128-B-2 dated September 4, 1996, validating him as an associate of the Northern Structure prison gang. Additionally, the Central File contains as CDC 128-B dated April 4, 2000, describing additional information being obtained describing the inmate's involvement in gang activity during 1998. This information was reviewed by ICC October 16, 2002, and it was determined the gang validation and indeterminate placement within SHU remained appropriate. The decision to retain the inmate in SHU was subsequently approved by the CSR November 21, 2002. Therefore, the original validation remains appropriate, since there has not been any additional information obtained that would warrant a different decision relative to the inmate's current placement.

Supplement Page 2
Lira, H-36693
Appeal # PBSP-C-02-03100
       C-02-03434

III

The California Code of Regulations (CCR), Title 15, Section 3341.5 (c)(A)(2.), identifies a validated prison gang associate as a severe threat to the safety of others or the security of the institution and requires placement in SHU for an indeterminate term.

CCR, Title 15, Section 3321 (b)(3)(B), requires that documentation provided to an inmate regarding confidential information include as much information as can be disclosed without identifying its source, and that it contain an evaluation of the source's reliability.

CCR, Title 15, Section 3341.5 (c)(5), allows the Departmental Review Board to authorize the release of validated gang associates from the SHU categorized as not being involved in any gang activity for a minimum of six years.

## DETERMINATION OF ISSUE

The inmate is requesting to be released from SHU. The inmate contends that since staff have failed to prove the reliability of evidence used to validate him as an associate of a prison gang, the evidence is therefore invalid, making his placement in SHU inappropriate. The CDC 128-B-2 of September 4, 1996, was supported by three documents, one dated September 25, 1992, that was deemed to be confidential. The subsequent CDC 128-B dated April 4, 2000, described additional information relative to gang activity contained in a confidential memorandum dated April 1, 1998. Both confidential documents were disclosed via CDC 1030 Forms and included an evaluation of the source's reliability. Each document's reliability had been established through multiple means. However, to provide the inmate with additional information relative to the reliability would result in the confidential source being disclosed. Therefore, the decision reached by the ICC on October 16, 2002, to retain the inmate in Security Housing Unit for an indeterminate period of time based upon his gang affiliation was appropriate. In the second Appeal, Log #C-02-03434, the inmate contends the same issues. Overall, these Appeals are an attempt to question the accuracy of the validation, which was completed in 1996. The inmate has been informed during several attempts to appeal the validation recently that he exceeded time limits to appeal. Future Appeals concerning ICC or CSR endorsements for Indeterminate placement that are void of Appeal issues concerning due process errors during the Committee and only refer to validation documentation will be rejected. The APPEAL IS DENIED. The inmate has also failed to support his allegation that the disciplinaries from April 1, 2000, through April 10, 2002, were issued as retaliation.

## MODIFICATION ORDER

No modification of this decision or action taken is required.

J. McGrath

JOE MCGRATH
Warden
Pelican Bay State Prison

BDS#017 1-28-03

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **MAY 21 2003**

In re:   Lira, H-36693
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0209553          Local Log No.: PBSP 02-03100

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner J. Pearson, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I   **APPELLANT'S ARGUMENT:** It is the appellant's position that he should be housed in a general inmate population placement. The appellant is requesting to have his case reviewed and to be released to the general inmate population with access to a work furlough program.

II   **SECOND LEVEL'S ARGUMENT:** It is staff's position that the appellant is validated as an associate of the Northern Structure (NS) prison gang. The Institution Classification Committee reviewed the appellant's case on October 16, 2002, and determined the validation and Security Housing Unit (SHU) indeterminate placement to be appropriate. The Classification Staff Representative reviewed the appellant's case and reendorsed the appellant for retention in the SHU as he found that the appellant remains a threat to the safety and security of the institution.

III   **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.** **FINDINGS:** The appellant is housed in facility, which is commensurate with his case factors. The appellant's case factors as delineated on CDC Form 128-G, Classification Chrono, include his association with a prison gang. The appellant's placement is appropriate and in accord with the primary objectives of the correctional institutions which are to protect the public by safely keeping person committed to the custody of the Director of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities. Consistent effort is being made to insure the security of the institution and the effectiveness of the treatment programs within the framework of security and safety. The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department. No relief shall be afforded to the appellant at the Director's Level of Review.

   **B.** **BASIS FOR THE DECISION:**
   California Code of Regulations, Title 15, Section: 3270, 3341.5, 3375

   **C.** **ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, PBSP
Appeals Coordinator, PBSP