EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
JONATHAN L. WOLFF
Supervising Deputy Attorney General
DANIELLE F. O'BANNON, State Bar No. 207095
Deputy Attorney General
SCOTT J. FEUDALE, State Bar No. 242671
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5871
Fax: (415) 703-5843
Email: Scott.Feudale@doj.ca.gov

Attorneys for Defendants Richard Kirkland, Don Waite, Teresa A. Schwartz, James R. Cox, Richard L. Pederson, Barry J. O'Neill, Daniel R. Smith, Victor Almager, Karen Mann, Louis L. Olivas, Steven P. Dwight, Patrick S. Nowling, Monte K. Day, John E. Maykel, Steven R. Moore, Kirsten J. Slatten, J. Olson, Weldon J. Olmstead, Edward S. Alameida, Jr., Donald R. Busser, Steve Herrera, Brian Fielder, Jose Chavez, Darlene Pizzella, John D. Stokes, Allen K. Scribner, Cara M. Patten, Darin W. Bradbury, Cheryl Bolles, Brian Heaps, Jeffrey M. Briddle, Matthew J. Nimrod, Donald D. Bruce, Kenneth R. Cruse, Mark Piland, James E. Tilton and Don Schmidt

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ERNESTO LIRA,**<br>Plaintiff,<br>v.<br>**DIRECTOR OF CORRECTIONS, et al.,**<br>Defendants. | C-00-0905 SI (pr)<br><br>**DECLARATION OF RICHARD KIRKLAND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

I, Richard Kirkland, declare:

1. I am a Defendant in this action. I am a former employee with the California Department of Corrections and Rehabilitation (CDCR). I was employed with CDCR for twenty-two years. In 2002, I was employed as the Associate Warden at Pelican Bay State Prison (PBSP). I submit this declaration in support of Defendants' summary-judgment motion. I am competent to testify to the matters set forth in this declaration, and if called upon to do so, I would and could testify.

2. As the Associate Warden, one of my job duties included attending the prison's Institutional Classification Committee (ICC) and Unit Classification Committee (UCC) hearings. These hearings, at which an inmate's case factors are discussed, are part of the prison's classification process. The classification process is briefly described below:

a. Institutional Classification Committee: In part an ICC is convened to decide whether an inmate who has been validated as a gang member or associate by the Special Services Unit (SSU) should be retained in a Security Housing Unit (SHU) for an indeterminate term based on his gang affiliation. *See* Cal. Code Regs. tit. 15, § 3338(d) (2007). The ICC shall recommend transfer of inmates, act on cases referred by lower committees, review an inmate's requests for meritorious sentence reductions, make referrals and recommendations through the classification services chief for cases requiring Departmental Review Board decisions, and change an inmate's work/privilege group. *Id.* § 3376(d)(3) (2007). The composition of the ICC includes the warden or deputy warden as the chairperson; a correctional administrator as the alternate chairperson; psychiatrist or physician; facility captain; correctional captain; correctional counselor III or correctional counselor II as the recorder; assignment lieutenant; educational or vocational program representative; and other staff as required. *Id.* § 3376(c)(2). A quorum is a minimum of three members. *Id.* § 3376(b).

b. Unit Classification Committee: The UCC shall review each inmate's case at least annually to consider the accuracy of the inmate's classification score, custody designation, program, work and privilege group, and facility placement, including recommendation for transfer. *Id.* § 3376(d)(2). The composition of the UCC includes the prison's facility captain or correctional captain as the chairperson; a correctional counselor III as the alternate chairperson; a

correctional counselor II or correctional counselor I as the recorder; educational or vocational representative; and other staff as required. *Id.* § 3376(c)(1). A quorum is a minimum of three members. *Id.* § 3376(b). An inmate serving an indeterminate term in the Security Housing Unit as a validated gang member or associate shall be reviewed by a classification committee at least every 180 days. *Id.* § 3341.5(c)(2)(A).

c. Classification Staff Representative: A classification committee's recommendation of an inmate's transfer to a Security Housing Unit for an indeterminate term must be endorsed by a Classification Staff Representative (CSR). *Id.* § 3379(a)(1).

3. Through my employment with CDCR, I have gained experience and awareness of general prison conditions, including prison gangs. "The CDCR has determined that prison gangs and disruptive groups, through their illegal activities, are a threat to the security of all institutions . . . They are also a definite danger to public order and safety." Cal. Dep't Corrs. & Rehab. Dep't. Ops. Manual § 55070.5 (2005). A gang "means any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing, threatening, financing, soliciting, or committing unlawful acts or acts of misconduct classified as serious . . ." Cal. Code Regs. tit. 15, § 3000 (2007). A prison gang is one which originated and has its roots within the CDCR or any other custodial system. Cal. Dep't Corrs. & Rehab. Dep't. Ops. Manual § 55070.16.1 (2005).

4. Each inmate has a Central File, which "means a master file maintained by the department containing records regarding each person committed to its jurisdiction." Cal. Code Regs. tit. 15, § 3000.

5. Each inmate has a Central File, which "means a master file maintained by the department containing records regarding each person committed to its jurisdiction." Cal. Code Regs. tit. 15, § 3000.

///

///

Decl. Richard Kirkland Supp. Defs.' Mot. Summ. J.

Lira v. Director of Corrections, et al.
C-00-0905 SI (pr)

3

6. I attended the following classification hearing relating to Mr. Lira:

a. October 16, 2002, ICC Annual/114D Review. Mr. Lira was present at the ICC Annual Review. Mr. Lira's central file was reviewed, including Mr. Lira's gang activity. Prior to the committee meeting, Mr. Lira was issued an updated Administrative Unit Segregation Notice (CDC 114D) dated October 10, 2002, and a Notice of Critical Case Information (CDC 812A updated by the Institutional Gang Investigator (IGI) on October 2, 2002. A review of Mr. Lira's case factors reflected a CDC 128-B2 chrono, dated September 4, 1996, indicating Mr. Lira's affiliation with a prison gang. The committee further noted that an active/inactive review had been completed on April 4, 2000, in regards to Mr. Lira's prison gang status, and that Mr. Lira would be eligible for another review in 2004 upon his request. The committee elected to retain Mr. Lira on Security Housing Unit (SHU) indeterminate status and refer him to the CSR with a recommendation for PBSP SHU based upon his validation as an associate of the Northern Structure prison gang. Further, Mr. Lira was informed that the departmentally recognized avenues for release from SHU were through the debriefing process or as an inactive prison gang member or associate as delineated in Sections 3378(e), 3341.5(2)(c) & (4) of Title 15 of the California Code of Regulations. Mr. Lira participated in the hearing, acknowledged understanding the committee's decisions, and stated he disagreed with that action and intended to appeal the gang validation and the CDC 114D. The committee's decisions on October 16, 2002, were based upon the contents of Mr. Lira's central file and my experience and awareness of general prison conditions, including prison gangs. (Attached as Exhibit A is a true and correct copy of the CDC 128G dated October 16, 2002.)

7. I participated in the following appeals decisions relating to Mr. Lira:

a. December 24, 2002, 1st Level Appeal. Mr. Lira requested release from the SHU and placement in the general population and requested that all confidential documentation used in the validation process be expunged from his central file. A review of Mr. Lira's appeal was completed. Mr. J. Cox, Correctional Counselor II, was assigned to investigate Mr. Lira's allegations. Mr. Cox interviewed Mr. Lira on December 20, 2002 and Mr. Lira contended that he was inappropriately retained on indeterminate status in PBSP SHU and that his validation and the

information used was inappropriate. Mr. Lira also requested the confidential documentation utilized in the validation be expunged from his central file. Mr. Cox also completed a review of Mr. Lira's central file relative to Mr. Lira's appeal. Mr. Lira's central file contained a CDC 128B-2 dated September 1996 indicating that Mr. Lira was a validated as an associate of the northern structure prison gang. The file also included a CDC 128B Active/Inactive Gang Status Review dated April, indicating that there was new information that had developed as a result of the investigation and a confidential memorandum dated April 4, 1998. The ICC of October 16, 2002 reviewed the documents and determined that validation/SHU indeterminate placement was appropriate. The CSR reviewed was completed on November 21, 2002 following the ICC review and re-endorsed Mr. Lira for retention in the PBSP SHU. The CSR indicated that Mr. Lira remained a threat to the security of the institution by his continued association with a prison gang engaged in a criminal conspiracy against the safety of others. The CSR also indicated that all referenced documents were present in the file, properly annotated and properly disclosed. The original validation documents remained unchanged and Mr. Lira did not provide any new information that would warrant a different decision relative to his PBSP SHU indeterminate placement. The contention that Mr. Lira should be released from SHU or that the confidential memorandums utilized in the validation process should be removed from his central file was inappropriate and unsupported by the departmental rule. After close review, I found that staff acted appropriately and in accordance with the State Law, California Code of Regulations, Title 15, and the Department Operations Manual. There was no evidence to support Mr. Lira's claim that continued SHU indeterminate placement was inappropriate. Based on the above, Mr. Lira's appeal was denied at the first level of review. (Attached as Exhibit B is a true and correct copy of the 2nd Level Appeal Decision dated December 24, 2002.)

///

///

///

///

///

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 18, 2008, at Sacramento California.

RICHARD KIRKLAND

Decl. Richard Kirkland Supp. Defs.' Mot. Summ. J.

Lira v. Director of Corrections, et al.
C-00-0905 SI (pr)

6