IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO LIRA, | No. C 00-0905 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| MATTHEW CATE, Director of Corrections, | |
| Defendant. | |

On February 19, 2010, the Court held a hearing on plaintiff's motion for attorneys' fee and costs. For the reasons set forth below, plaintiff's motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiff Ernesto Lira filed this civil rights action under 42 U.S.C. § 1983, challenging his placement in administrative segregation ("Ad-Seg") while at Deuel Vocational Institution, and later in a Security Housing Unit ("SHU") at Pelican Bay State Prison. Prison officials placed plaintiff in Ad-Seg and the SHU after he was "validated" as an associate of the Northern Structure prison gang. Plaintiff claimed that his due process rights were violated because he was not in fact an associate of the prison gang and his validation was not supported by sufficient, reliable evidence. Plaintiff also claimed that his due process rights were violated because he was not given notice and an opportunity to present his views before being placed in segregation, and because he was denied meaningful opportunities to challenge his validation and continued retention in segregated housing.

Plaintiff originally filed this case *pro se*. By order filed May 17, 2002, the Court dismissed the case without prejudice on the ground that plaintiff had not exhausted his administrative remedies with

respect to all of the claims alleged in the complaint. Plaintiff appealed to the Ninth Circuit, and the Ninth Circuit appointed the law firm of Howard, Rice, Nemerovski, Canady, Falk & Rabkin to represent plaintiff on appeal. In a published decision noting a split of authority among the circuits, the Ninth Circuit reversed and remanded, holding that the Prison Litigation Reform Act did not require dismissal of an entire action where a prisoner's complaint contains exhausted and unexhausted claims. *See Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005). Instead, the Ninth Circuit instructed that the proper treatment of a "mixed" complaint depends on the relatedness of the claims, and held that if an exhausted claim was intertwined with an unexhausted claim, the claims should all be treated as exhausted. *Id.* at 1177. The Supreme Court denied defendant's petition for writ of certiorari. 549 U.S. 1204 (2007).

On remand, plaintiff continued to be represented by counsel. The Court found that plaintiff's due process claims were interrelated, and allowed plaintiff to file an amended complaint alleging a single due process violation arising out of his gang validation and placement and retention in Ad-Seg and the SHU. As originally filed, plaintiff's first amended complaint named as defendants a number of CDCR personnel sued for damages in their individual capacity, along with the Secretary of CDCR who was sued in his official capacity for declaratory and injunctive relief. In December 2006, the law firm of Chapman, Popik & White substituted into the action, replacing Howard Rice as plaintiff's counsel of record. The parties engaged in extensive discovery and further motion practice, including motions to dismiss and motions for summary judgment filed by defendants. After the Court denied defendants' motion for summary judgment, defendants noticed an interim appeal of the Court's denial of qualified immunity. The interlocutory appeal caused the cancellation of the March 23, 2008 trial date and stayed all proceedings in this Court. Plaintiff then decided to dismiss the remaining individual defendants and all claims for damages in order to moot the pending appeal. The parties could not agree on the terms of a dismissal of the individual defendants, and plaintiff filed a series of motions both in this Court and the Ninth Circuit in order to effectuate the dismissal of the individual defendants and a remand. In October 2008, the Ninth Circuit granted plaintiff's motion to dismiss the individual

2

defendants and to dismiss the appeal as moot, and the case was remanded to this Court.[1]

Following remand, the parties engaged in further pretrial discovery, including expert discovery. In December 2008, the Court held a pretrial hearing and ruled on various motions in limine. On the parties' cross-motions, the Court ruled that the attorneys-eyes-only restrictions of the protective order for confidential validation evidence would be lifted for trial purposes. Defendant took an emergency appeal from that ruling by petition for writ of mandamus, which the Ninth Circuit granted over plaintiff's opposition on December 24, 2008.

From January 13 to February 12, 2009, the Court held a bench trial on plaintiff's claims for declaratory and injunctive relief. Plaintiff presented 17 witnesses, including three experts and testimony from plaintiff over three separate sessions. Defendant presented 4 witnesses, including its experts. Approximately 300 documentary exhibits were entered into evidence at trial. On September 30, 2009, the Court issued a 49-page Findings of Fact and Conclusions of Law. The Court found that plaintiff's due process rights were violated when he was initially validated as a Northern Structure associate because he was never given notice of the initial validation investigation, and was never afforded the opportunity to be heard prior being validated or placed in administrative segregation. The Court also found that this deprivation of procedural due process was not cured in any of the subsequent administrative hearings and inmate appeals because none of these proceedings constituted a meaningful review of the gang validation. Finally, the Court found that plaintiff's substantive due process rights were violated because the items of evidence used to validate plaintiff as a prison gang associate lack

---

[1] As set forth in plaintiff's papers and declarations, when defendant appealed the qualified immunity issue, plaintiff's lawyers had extensive discussions with Mr. Lira regarding his options of (1) litigating the interim appeal and waiting several years for trial, (2) voluntarily dismissing the entire action, and (3) voluntarily dismissing the individual defendants. As part of these discussions, the Chapman Popik lawyers offered to share with Mr. Lira a portion of any eventual award of fees should he elect to dismiss the individual defendants and his claim for damages. Specifically, Chapman Popik agreed to share any fee award with Mr. Lira, following reimbursement of unrecovered costs (which are significant), at the rate of 20% of fees awarded up to a limit of $100,000. Chapman Popik arranged to have another lawyer serve as Mr. Lira's independent counsel with regard to these discussions. Mr. Lira agreed to dismiss the individual defendants, and the representation agreement was amended to reflect this fee-sharing arrangement. Plaintiff's fee petition discloses this fee arrangement.

Defendant does not raise any objection to the fee-sharing arrangement. At oral argument, in response to the Court's inquiry about whether defendant had a position regarding the fee-sharing arrangement, defense counsel stated that he had researched the question and concluded that the arrangement was not prohibited.

3

sufficient indicia of reliability to meet the "some evidence" standard as required by the case law. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).

Based upon expert psychological testimony and evidence at trial, the Court found that plaintiff's experience in the SHU caused him to develop depression and post-traumatic stress disorder, and that he currently suffers from these conditions, despite his parole from Pelican Bay. The Court held that plaintiff was entitled to a judicial declaration that his gang validation was never supported by accurate or reliable evidence and was implemented in violation of his procedural rights. The Court also directed defendant Matthew Cate as Secretary of CDCR to expunge plaintiff's validation as a Northern Structure associate from CDCR records, to report the expungement to all gang-related law enforcement databases and clearinghouses to which the original validation was reported previously, and to remove all documents related to the validation from plaintiff's prison file.

Defendant has appealed this Court's judgment and Findings of Fact and Conclusions of Law. Now before the Court is plaintiff's motion for attorneys' fees and costs.

**DISCUSSION**

Plaintiff seeks a total of $1,560,000.32 in attorneys' fees and expenses, broken down as follows: (1) a lodestar of $1,044,101.10 in fees, with a 1.5 multiplier for extraordinary litigation efforts and results, for a total of $1,513,219.20; and (2) $46,781.12 in costs.[2] In support of the fee petition, plaintiff has submitted declarations from plaintiff's lawyers at Howard Rice (Douglas A. Winthrop and Robert D. Hallman) and Chapman Popik & White (Mark A. White and William B. Chapman). These attorneys state, *inter alia*, that they have made various deductions to the billing records in the exercise of billing judgment. *See* Winthrop Decl. ¶ 4 (deductions of 76.4 hours of attorney time and 25.8 hours of paralegal time); Chapman Decl. ¶¶ 17-18 (monthly deductions of at least 10% throughout litigation, and

---

[2] These amounts reflect certain deductions made by plaintiffs in response to defendant's opposition.

4

additional deduction of 141 hours of attorney and paralegal time).[3] Plaintiff has also submitted the following declarations in support of the fee petition: (1) Richard Pearl, an attorney who specializes in issues involving court-awarded attorney's fees; (2) Morris Baller, an attorney who specializes in civil rights law; (3) Allen Ruby, an attorney who specializes in representation of litigants in complicated civil and criminal cases; (4) Charles Carbone, an attorney who is the Director of litigation for the non-profit California Prison Focus and who also maintains a private prisoner rights law practice; and (5) Michelle Johnson, the Chief Executive Officer at Howard Rice.[4] These declarations generally attest to the prevailing market rates, the qualifications and experience of plaintiff's counsel, and the significance of the results achieved in this litigation.

Defendant opposes plaintiff's motion for attorneys' fees and expenses on numerous grounds, and has submitted the declarations of defense counsel, Scott Feudale, and Andre Jardini, a retained fee auditing expert.

Under 42 U.S.C. § 1988(b), the Court has discretion to award plaintiffs their reasonable attorneys' fees and expenses. Reasonable attorneys' fees are determined by the "lodestar method," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In determining the appropriate number of hours to be included in a lodestar calculation, the Court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Id*. at 434. "The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

---

[3] Plaintiff submitted supplemental declarations from counsel in connection with the reply. Defendant has moved to strike portions of the reply, and the supplemental declarations of counsel, on the ground that new and additional evidence may not be offered in a reply. While defendant is generally correct that new arguments and evidence cannot be raised for the first time in a reply, the Court finds that in the context of a fee petition, supplemental evidence may be offered in reply for the purpose of clarifying or further substantiating the claimed hours and costs that are challenged as unreasonable in the defendant's opposition.

[4] Plaintiff has also submitted the declaration of Peter Sandmann, an attorney who was retained to separately represent plaintiff for the limited purpose of counseling him with respect to the pros and cons of dismissing the individual defendants.

**I.     Hourly rate**

The Prison Litigation Reform Act of 1995 ("PLRA") limits the amount of attorney fees that can be awarded to prisoners' counsel. 42 U.S.C. § 1997e(d)(3) provides that no § 1988 award of attorney's fees in a prison-inmate action "shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, United States Code, for payment of court-appointed counsel." Section 3006A is the statute that provides the methodology for determining the hourly rate at which appointed criminal defense counsel are compensated, and it states that the Judicial Conference will determine that rate and any periodic adjustments to that rate. *See* 18 U.S.C. § 3006A(d).

The parties dispute whether the lodestar should be calculated using historical or current PLRA rates. Effective January 1, 2010, the panel-counsel rate is $142 per hour, and 150% of that rate ("the PLRA rate") is $213 per hour. The prior PLRA rates are as follows: from April 2004 (when Howard Rice was appointed by the Ninth Circuit) to December 31, 2008, the PLRA rate was $169.50 per hour, and from January 1, 2009 to December 1, 2009, the PLRA rate was $177 per hour. Jardini Decl. ¶¶ 32-33. Plaintiff contends that the Court should apply the current $213 PLRA rate to compensate counsel for the delay in receiving fees by court award, while defendant asserts that it is reasonable to apply historical rates because those were the rates in effect when plaintiff's attorneys were representing him in this action.

Plaintiff cites numerous cases in which courts have calculated lodestar values by applying the PLRA rate in effect at the time of the fee award. *See, e.g.*, *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1282 (D. Wyo. 2004); *Gomez v. Reinke*, CV91-299-S-LMB, 2008 WL 3200794, at *9 n.5 (D. Idaho Aug. 7, 2008) (under PLRA, "[i]t is allowable for attorneys to be awarded fees at the current rate, rather than the historical rate, to compensate the plaintiff for the delay in payment."); *see also D.M. v. Terhune*, 67 F. Supp. 2d 401, 412 (D.N.J. 1999); *Carty v. DeJongh*, Civil No. 94-78, 2008 WL 4861519, at *3 (D.V.I. Nov. 10, 2008). As the *Skinner* court explained, "[t]he United States Supreme Court in *Missouri v. Jenkins*, recognized that 'compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.' . . . . The language of the PLRA does not indicate any intention of changing this long-standing

6

1 policy." *Skinner*, 324 F. Supp. 2d at 1282-83 (internal citations omitted).

2 The Ninth Circuit has "recognized that district courts have the discretion to compensate
3 prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic
4 rates in order to adjust for inflation and loss of the use funds." *Gates v. Deukmejian*, 987 F.2d 1392,
5 1406 (9th Cir. 1993). The Court finds it appropriate to award fees at current PLRA rate to compensate
6 for the delay in payment, which in this case has been considerable. Defendant relies on two cases in
7 which the courts applied historical rather than current PLRA rates. While the Court recognizes that, as
8 a matter of discretion, those courts awarded fees at historical rates, the Court also notes that those cases
9 are factually distinguishable in that there was not much difference between historical and current rates
10 as a practical matter, *see Batchelder v. Geary*, C 71-02017 RMW, 2007 WL 2427989, at *4 (N.D. Cal.
11 Aug. 22, 2007) (majority of attorney time during then-current rate), or the plaintiffs' attorneys'
12 submitted periodic interim fee requests, and thus did not experience significant delays in payment. *See*
13 *Plata v. Schwarzenegger*, C 01-1351 TEH, 2009 WL 2997412, at *2 (N.D. Cal. Sept. 16, 2009). To the
14 extent that defendant relies on the declaration of its fee expert, Mr. Jardini, for the proposition that
15 historical PLRA rates should be applied, the Court agrees with plaintiff that Mr. Jardini is providing
16 improper legal opinion.[5]

17 The parties also dispute whether the rates of summer attorneys and paralegals should be further
18 reduced below the PLRA hourly rate. Plaintiff contends that all attorneys should be compensated at the
19 $213 hourly rate, and they seek compensation for paralegals at $195 per hour, which is within the
20 prevailing market rates as substantiated by plaintiff's declarations. Defendant asserts that under the
21 PLRA, summer associates and paralegals should be billed at hourly rates much lower than those charged
22 by attorneys under the PLRA's fee cap. District courts are split on this question. *Compare Plata*, 2009
23 WL 2997412, at *2 (PLRA fee cap only applies to attorneys and does not require reduction in paralegal
24 rates), *with Jackson v. Austin*, 267 F. Supp. 2d 1059, 1066 (D. Kansas 2003) (reducing requested rates

---

26 [5] Plaintiff has filed an objection and motion to strike improper legal opinion and legal argument
from Mr. Jardini's declaration. The Court finds plaintiff's objections well-founded, as Mr. Jardini
27 provides legal opinions regarding the appropriate rates under the PLRA, whether a multiplier is
authorized by the PLRA, and his declaration contains numerous citations to legal authority. The Court
28 GRANTS plaintiff's motion to strike paragraphs 32 and 86 as improper legal opinion, and the Court has
disregarded the portions of the declaration containing legal argument.

*(Left margin: **United States District Court** / For the Northern District of California)*

1 for legal assistants, investigator and law clerks to $40 per hour in light of "the reduction contemplated
2 by Section 1997e(d)(3)"). The Court agrees with the reasoning of the *Plata* court that "the plain
3 language of § 1997e(d)(3) incorporates only the hourly rate for payment of counsel – i.e., attorneys –
4 and not the entire payment scheme for court-appointed representation under 18 U.S.C. § 3006A. . . .
5 [and thus that] the PLRA does not require any reduction in paralegal rates . . ." *Plata*, 2009 WL
6 2997412, at *2; *see also Perez v. Cate*, C 05-05241 JSW, 2009 WL 2849593, at *1 (N.D. Cal. Sept. 1,
7 2009) ("The plain language of the statute does not distinguish between the maximum hourly rate
8 applicable to counsel and the maximum hourly rate applicable to persons other than counsel. . . .
9 Accordingly, the Court construes the PLRA to permit an award of paralegal fees based on hourly rates
10 up to, but not exceeding, the rate cap set forth in Section 1997e(d)(3), so long as those rates are
11 reasonable.").

12 Accordingly, the Court concludes that the appropriate hourly rate for the lodestar calculation is
13 $213 per hour for attorneys, and $195 per hour for paralegals.

## II.   Level of success

16 Defendant also contends that plaintiff's fee award should be greatly reduced to reflect plaintiff's
17 "limited success." Defendant argues that plaintiff achieved only limited success because he initially
18 sought damages against 35 individual defendants and systemwide injunctive relief, and ultimately
19 secured only declaratory and injunctive relief with respect to himself.[6] The Supreme Court has
20 instructed that "[t]he reasonableness of the fee is determined primarily by reference to the level of
21 success achieved by the plaintiff." *Id*. at 1101-02 (citing *Hensley*, 461 U.S. at 436). "Under *Hensley*,
22 the reasonableness of a fee award is determined by answering two questions: 'First, did the plaintiff fail
23 to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff
24 achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a
25 fee award?'" *Id*. at 1103. Defendant concedes that under the first *Hensley* factor plaintiff's claims

---

[6] Two individual defendants were dismissed on statute of limitations grounds, others were dismissed by plaintiff in response to defendants' motion for summary judgment, and the remaining individual defendants were dismissed in order to moot defendants' interlocutory appeal on qualified immunity.

8

against the individual defendants are related to the claims against defendant Cate. However, defendant argues that the fee award should be reduced under the second *Hensley* factor to reflect plaintiff's limited success at trial. Defendant proposes deducting all hours and costs related to the litigation of plaintiff's claims against the individual defendants.

"Success is measured not only by the amount of the recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales v. City of San Rafael*, 96 F.3d 357, 365 (9th Cir. 1996); *see also Friend v. Kolodzieczak*, 72 F.3d 1386, 1390 (9th Cir. 1995) ("The fact that plaintiffs received no monetary relief is of no import, since, unlike the *Farrar* plaintiffs, the primary goal of the plaintiffs in this case was to obtain injunctive relief."). Plaintiff fully prevailed on his claims at trial, and in so doing vindicated his constitutional rights. Plaintiff has submitted numerous declarations attesting to the significance of the declaratory and injunctive relief plaintiff obtained. Plaintiff's tactical decision to dismiss the individual defendants and the corresponding monetary damages claims does not diminish his level of success. Because of the significance of the legal issues and the deterrent effect of this case, the Court rejects defendant's contention that the lodestar should be reduced.

### III.   Specific challenges to hours

#### A.   Miscalculations

Defendant identified two miscalculations in plaintiff's fee petition. Plaintiff's reply corrects both errors.

#### B.   "Duplicative" time and staffing decisions

Defendant challenges as duplicative and unnecessary time spent by plaintiff's counsel on the same task, such as time spent by multiple lawyers attending the same court hearings, depositions, and meetings with Mr. Lira, as well as coordination between Howard Rice and the Chapman firm on the briefing on defendant's motion for summary judgment. Mr. Jardini generally asserts that plaintiff's counsel unreasonably staffed the case, and that the fee request should be reduced by 221.8 hours. *See* Jardini Decl. ¶¶ 42-46. Mr. Jardini does not explain how the allegedly duplicative work could have been

9

performed differently, and it appears that Mr. Jardini calculated the 221.8 hour deduction by reducing all multiple-attorney activities to a single attorney.

As an initial matter, the Court notes that in arriving at the 221.8 hour amount, it appears that Mr. Jardini has assumed that both Mr. Chapman and Mr. White attended all of the 20-plus depositions in this case. However, counsel explains that each of the depositions was either taken or defended solely by Chapman or White, with the exception of four depositions in which one or the other attended a portion. To the extent that both lawyers attended portions of some depositions, the Court finds it reasonable that lead counsel would observe portions of important depositions in order to evaluate deponents as potential trial witnesses or to determine the necessity for further discovery.

Moreover, "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). Defendant has not shown that any of the work performed was unnecessary, and considering the complexity of this case it seems reasonable that plaintiff's counsel would need to confer with each other, review and coordinate pleadings and discovery, and attend important meetings with Mr. Lira and hearings in this case. Moreover, as plaintiff notes, defendant was represented at various hearings and at trial by two lawyers. The Court is satisfied that the fees requested are reasonable and justified by the results obtained, and finds it inappropriate and unnecessary to speculate about whether different staffing decisions would have led to the same results at a lower cost.

### C.   "Excessive hours"

Defendant next contends that 705.6 of the hours billed by plaintiff's counsel were unnecessary. Defendant, through Mr. Jardini, asserts that counsel spent too much time various tasks such as the appellate briefs that Howard Rice did before the Ninth Circuit; plaintiff's opposition to the petition for writ of certiorari; the motion for leave to amend following remand; plaintiff's opposition to defendant's motion for summary judgment; plaintiff's opposition to the motion for judgment on the pleadings; plaintiff's motion to dismiss the individual defendants; and plaintiff's post-trial brief. For each project, Mr. Jardini generally asserts that plaintiff's attorneys should have been more efficient, and he proposes

10

a reduction. For example, regarding plaintiff's supplemental appellate brief, for which two attorneys and two paralegals billed 198.1 hours, Mr. Jardini states, "This 51-page brief was a request to remand to district court and vacate the judgment. I believe a reasonable amount of time to prepare this document would be 160 hours, which results in a recommended reduction of 38.1 hours." Jardini Decl. ¶ 49. Similarly, with regard to plaintiff's opposition to defendant's summary judgment motion, Mr. Jardini states, "Chapman utilized four timekeepers and billed 192.6 hours on the preparation of the document. I believe a more reasonable time for the preparation of this document would be 100 hours. As a result, I recommend a reduction of 92.6 hours." *Id.* ¶ 56.

Plaintiff responds that defendant has not met its "burden of rebuttal" to show that the claimed hours are not accurate or reasonable. Plaintiff argues that Mr. Jardini does not explain how or why he came up with reduced hours for any of the briefing projects, or what factors or considerations went into his evaluation, and that instead he has engaged in subjective, impressionistic second-guessing. The fee applicant "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked," while "[t]he party opposing the fee application has a burden of rebuttal that requires the submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

The Court agrees that defendant has not met its burden to show that the challenged hours are not reasonable. All of the challenged briefing projects were major in scope, and a number of them were potentially dispositive. Although defendant criticizes plaintiff for spending too much time on these important litigation matters, the Court notes that plaintiff prevailed at each of these critical junctures. In the absence of any specific, evidentiary challenges to plaintiff's hours, the Court finds the time was spent reasonably and plaintiff may recover for the time at issue.

### D. Redacted time entries

Defendant objects that certain of Howard Rice's billing records contain redacted entries totaling 73.6 hours, and that it is impossible to evaluate the reasonableness of those hours. Plaintiff responds that those entries were originally redacted for work-product protection purposes, and they have

11

1  submitted the declaration of Robert Hallman to address the redactions. Mr. Hallman states, "[h]aving
2  reviewed the time entries at issue, I find that the work product concerns that originally informed the
3  redactions are now moot. The redactions addressed our research and analysis of the statute of
4  limitations questions, the application of the equitable tolling doctrine, and issues of waiver on the part
5  of the CDCR defendants. While these issues were examined as part of a broad appellate and trial court
6  strategy, they were in fact litigated and resolved to a large extent over the course of the district court
7  proceedings." Hallman Decl. ¶ 10. Howard Rice has resubmitted the contested entries without
8  redactions. The Court has reviewed the entries and finds that the time spent was reasonable and related
9  to the successful litigation of plaintiff's claims.

### E. "Entries not associated with prevailing claim"

Defendant contends that the Court should eliminate 43.2 hours because they were "not directly and reasonably related to proving a due-process violation." Opposition at 9:19-20. A number of the challenged entries relate to counsel's communications with Mr. Lira (e.g, "Attention to email re call from client," "telephone calls with client re status of his incarceration," "draft letter to client's sister re Ninth Circuit opinion"), while others concern Howard Rice's motion to appoint pro bono counsel for plaintiff after remand, efforts to obtain plaintiff's C-file, factual and legal research regarding plaintiff's parole violation, and the dismissal of the individual defendants. Jardini Decl. Ex. 7.

The Court finds that these hours are recoverable because the tasks were related to the litigation of plaintiff's claims. In order to effectively represent their client, counsel must communicate with their client regarding the case status and developments. Howard Rice's efforts to secure pro bono counsel for plaintiff after remand were related to the prosecution of this case, as were counsel's efforts to obtain plaintiff's C-file, which was a critical piece of evidence in this case. Similarly, plaintiff's parole violation was related to his due process claims because he was reincarcerated and placed in the SHU based on the prison gang validation. As discussed *supra*, plaintiff's claims against the individual defendants were legally and factually connected to his due process claim against defendant Cate, and the time spent related to their dismissal is recoverable.

### F. "Overhead and clerical billing"

Defendant challenges 126.4 hours as "non-compensable administrative functions" that should be considered overhead. Defendant also challenges 31.1 hours billed primarily by paralegals as "clerical" in nature, and argues that those hours should be compensated at a rate of $40 per hour.

With regard to both categories of challenged entries, plaintiff asserts that the attorney and paralegal activities involved more than routine secretarial or administrative efforts such as word processing or case filing, and instead required a familiarity with the claims and issues in the case, the developing discovery record, and an ability to organize and synthesize case information into useable work product. Mr. White states, *inter alia*, "[t]hese entries [] reflect time spent on such matters as substantive correspondence with retained expert witnesses and intra-office meetings and conferences devoted to organizing and delegating litigation responsibilities and tasks, including to our paralegals." Supp. White Decl. ¶ 22. A number of the paralegal activities "included such tasks as selecting relevant documents for client meetings, expert witness meetings and depositions; selecting and organizing documents for issue binders; preparation of issue chronologies; and organization of trial logistics, including AV support." *Id*.

The Court has reviewed the challenged entries and is satisfied that the activities are not overhead or clerical in nature. As an initial matter, the Court finds that many of descriptions of the "overhead" entries demonstrate that the activities at issue are not overhead, but rather involve legal or paralegal work. As just several examples, defendant has challenged the following entries as "overhead": "meeting with R. Hallman re research topics for reply brief," "Review oppositions to cert petitions on file for format and structure," "internal conference with S. Jacob to discuss research for motion to amend," "supervise associate research re privileges claimed," "outline discovery for follow up by legal assistant," "prepare expert retention agreement for C. Haney." Jardini Decl. Ex. 8. All of these entries relate to legal or paralegal work integral to the substantive litigation of plaintiff's claims, and none can fairly be characterized as ministerial and not requiring special education or experience. *See In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 492 (Bankr. D. Utah. 1991) ("If the service performed . . . consists of typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying, or mailing documents, the task is clerical in nature and not

13

compensable. Such tasks are traditionally charged to overhead and included in the professional's hourly rate."). With regard to those "overhead" and "clerical" entries that, on their face, could be interpreted as involving clerical or administrative tasks – such as "create list of CDCR terms with spellings for Court Reporter use" – plaintiff has met his burden to show that these activities are compensable at the rates claimed.

### G. "Vague" billing entries

Defendant contends that 21 hours of time entries are vague and do not adequately identify the subject or scope of the work performed. The Court has reviewed the contested entries and finds that they sufficiently describe the tasks performed to enable the Court's review of the fee petition, particularly when reviewed in context of other contemporaneous time entries. For example, one of the challenged entries is "post deposition document search" on July 5, 2007, for paralegal "GW" at Chapman, Popik & White. Jardini Decl. Ex. 10; Chapman Decl. Ex. B at 22. The entries immediately prior to that entry – which are not challenged – relate to preparing for and attending the deposition of Rosencrans. Chapman Decl. Ex. B at 22. Similarly, other challenged entries – such as "research experts' opinions," "follow-up medical files" and "review of pleadings and other documents re trial court and appellate issues raised by dismissals and research re same"– contain enough detail to allow for adequate review. *See Hensley*, 461 U.S. at 437 n.12 (A plaintiff is "not required to record in great detail how each minute of his time was expended," but only "identify the general subject matter of his time expenditure.").

### H. Costs

Plaintiff seeks $47,031.99 in costs pursuant to 42 U.S.C. § 1988. The charges are for computerized legal research, investigation services, photocopying, postage and courier services, and attorney travel and lodging. Defendant argues that $29,599.55 of the amount sought should not be

14

recovered because plaintiff did not supply adequate supporting documentation.[7] The Court finds that the initial declarations of counsel sufficiently detail these cost items, and in any event, plaintiff has supplied supplemental documentation with the reply. Plaintiff is entitled to recover the costs sought. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (postage, investigator, copying, hotel bills, messenger service, and reproduction costs were reasonable and recoverable under § 1988).

### I.     Fees for fee petition

Plaintiff seeks fees and expenses incurred in litigating the fee petition. Defendant does not raise any specific objection to this request, except to object that plaintiff supplemented the fee request with time spent after the filing of the initial motion. However, as plaintiff notes, plaintiff could not have included these hours in the initial motion, and plaintiff was required to expend additional time to respond to defendant's opposition. The Court finds that the time spent on the fee motion is reasonable and compensable. *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

### IV.     Multiplier

Plaintiffs seeks a multiplier of 1.5 on the lodestar. Plaintiff contends that a multiplier is necessary to a determination of a reasonable fee based on the special litigation challenges presented by this case, as well as the extraordinary results obtained. Defendant contends that the use of a multiplier is not permitted under the PLRA, and that even if it is, there are no exceptional circumstances warranting a lodestar enhancement. The Court finds it unnecessary to resolve the question of whether a multiplier is permitted under the PLRA because, while the Court recognizes the exceptional results obtained both in the Ninth Circuit's decision in *Lira v. Herrera*, 427 F.3d 1164 (9th Cir.2005), as well as on remand after the bench trial, the Court declines to award a multiplier.

---

[7] Defendant also argues that plaintiff should not recover for other costs – not sought under 42 U.S.C. § 1988 – through the award of a multiplier. Because the Court is not awarding a multiplier, the Court does not address the parties' arguments on this point.

15

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for attorneys' fees and expenses is GRANTED IN PART and DENIED in part. The Court awards the following: to Howard Rice, $281,878.50 in fees and $20,450.52, and to Chapman, Popik & White, $762,222.60 in fees and $26,330.60 in costs. (Docket Nos. 467, 468, 509).

**IT IS SO ORDERED.**

Dated: February 26, 2010

SUSAN ILLSTON
United States District Judge